## NOLAN v BRONSON

Docket No. 109000. Submitted December 13, 1989, at Detroit. Decided
August 22, 1990.

Lisa Marie Nolan died after being struck by an automobile driven
by Russell R. Bronson as Nolan and her brother, Michael
Nolan, were attempting to cross Goddard Road in Taylor,
Michigan, after they got off a Taylor School District bus driven
by Mildred Callaghan. Edith Marie Nolan, individually, as
personal representative of Lisa Marie Nolan's estate, and as
next friend of Michael Nolan, brought a negligence action in
Wayne Circuit Court against Russell R. and Mable A. Bronson,
Mildred Callaghan and the Taylor School District. The trial
court, Roland L. Olzark, J., granted motions for summary
disposition brought by Callaghan and the school district, ruling
that Callaghan, who had discharged the Nolan children from
the school bus on a parking lot off Goddard Road, did not have
an obligation to prevent them from crossing Goddard Road to
get home even where she knew they would do so. The trial
court also ruled that Callaghan's alleged breach of duty in
allowing Lisa Nolan to get off the bus through its rear emer-
gency exit was not a cause of Lisa Nolan's death. Plaintiff
appealed.

The Court of Appeals *held:*

1. A school bus driver may be held legally responsible for the
safety of passengers discharged near a highway when the
driver knows that the discharged passengers must cross the
highway to reach their homes. This duty of care is analogous to
the requirements imposed by MCL 257.682; MSA 9.2382 on
school bus drivers discharging passengers while the bus is
stopped on a roadway.

2. The question whether Callaghan's failure to prevent Lisa
Nolan from getting off the bus through the emergency exit was

REFERENCES

Am Jur 2d, Municipal, County, School, and State Tort Liability
§§ 236, 543, 578, 586, 637.

Personal liability in negligence action of public school employee,
other than teacher or executive or administrative officer, for
injury or death of student. 35 ALR4th 328.

in violation of pertinent regulations and whether that and any other violations were a proximate cause of the accident is more properly decided by the jury.

3. Governmental immunity does not bar plaintiff's claim against the school district inasmuch as her allegations of negligence fit within the statutory exception to governmental immunity provided for bodily injury or property damage resulting from the negligent operation of a government-owned motor vehicle by a governmental employee.

Reversed and remanded.

1. SCHOOLS — SCHOOL BUS DRIVERS — NEGLIGENCE.

A school bus driver may be held legally responsible for the safety of student passengers discharged on a parking lot near a highway when the driver knows that the discharged passengers must cross the highway to reach their homes; this duty of care is analogous to the requirements imposed by the Michigan Vehicle Code on school bus drivers discharging passengers while the bus is stopped on a roadway (MCL 257.682; MSA 9.2382).

2. GOVERNMENTAL IMMUNITY — MOTOR VEHICLES — SCHOOL BUSES.

A negligence claim against a school district and its school bus driver involving bodily injury or property damage sustained by a student passenger allegedly due to the manner in which the passenger was discharged from a school bus is not barred by the doctrine of governmental immunity as it fits within the motor vehicle exception to governmental immunity (MCL 691.1405; MSA 3.996[105]).

*James J. Harrington, III,* for plaintiff.

*Still, Nemier, Yockey & Tolari, P.C.* (by *Paul L. Kaliszewski*), for Mildred Callaghan.

*Craig, Farber, Downs & Dise, P.C.* (by *Kimberly M. Craig*), for Taylor School District.

Before: NEFF, P.J., and WAHLS and T. G. KAVANAGH,* JJ.

WAHLS, J. Plaintiff appeals as of right from a

* Former Supreme Court justice, sitting on the Court of Appeals by assignment.

May 4, 1988, Wayne Circuit Court order granting defendant Callaghan's and defendant school district's motions for summary disposition. We reverse.

Lisa Nolan was killed on February 6, 1986, when she was struck by a car driven by defendant Russell Bronson as she was crossing Goddard Road in Taylor. Just prior to the accident, Lisa Nolan was a passenger of a Taylor School District school bus driven by Callaghan.

Plaintiff filed a complaint against defendants school district and Callaghan on several bases of liability. On appeal from the trial court's order granting summary disposition, plaintiff argues only three bases of liability: that defendants negligently failed to stop the school bus in the roadway and activate its warning flashers so that the bus would be completely visible for four hundred feet to vehicles approaching or overtaking the bus; that defendants negligently failed to require Lisa Nolan to get off the bus from its front exit and walk across the street in front of the bus; and that defendants negligently failed to prevent Lisa Nolan from getting off bus and crossing the street where there was no traffic light.

I

Lisa Nolan was a fifteen-year-old ninth-grader in the Taylor School District. On the day of the accident, Lisa Nolan and her brother, Michael Nolan, boarded a school bus after school and rode it east on Goddard toward their home which was near the intersection of Goddard and Oak Street. Goddard runs east-west; Oak runs north-south. The first two designated bus stops on the bus route were on Goddard near the intersection of Goddard and Oak: the first was on the south side of God-

dard, approximately one-half block west of Oak; the second was on the north side of Goddard, approximately two blocks west of Oak. Although the Nolans lived north of Goddard, they normally got off the school bus at the bus stop on the south side of Goddard and then walked across Goddard. Callaghan was aware of this practice, and did not attempt to prevent it on previous days or on the day of the accident.

The first designated bus stop was in a parking lot on the south side of Goddard between Pine Street, which was west of the parking lot, and Oak, which was east of the parking lot. A driveway provides access from Goddard to the parking lot. Callaghan's normal practice, which she followed on the day of the accident, was to make a right-hand turn off Goddard on to the driveway and then stop the bus perpendicular to Goddard with the back of the bus five to ten feet from Goddard. After dropping off passengers, Callaghan would leave the parking lot and drive 1½ blocks west on Goddard to the designated bus stop on the north side of Goddard.

Several male students who sat near the front of the bus habitually harassed female students as the females got off the bus. Despite complaints from the female students, Callaghan did not prevent the harassment from occurring. In order to avoid being harassed, Lisa Nolan and two other females decided to get off the bus by way of the emergency exit at the back of the bus. Michael Nolan and another male got off with them on the day of the accident. Callaghan was aware that the children had been using the emergency exit for several days, but did not make any attempt to prevent them until the day of the accident when she yelled to them as they were getting off. Callaghan sur-

mised that they could not hear her over the noise on the bus.

After Callaghan stopped the bus in the parking lot on the south side of Goddard, Lisa Nolan and Michael Nolan jumped from the bus to the pavement five to ten feet from Goddard. Although there was a traffic light at Pine and Goddard to their left, Lisa and Michael attempted to cross Goddard in the middle of the block. Goddard is five lanes wide at that point, and the speed limit is reportedly 40 m.p.h. Again, Callaghan was aware that they had been crossing there for several days but did not attempt to stop them.

Lisa and Michael Nolan stepped from the curb and started to walk across Goddard. Lisa Nolan was struck by Bronson's car near the center lane of Goddard. The bus was still present at the scene unloading passengers at the time of the accident.

In his deposition, Bronson testified that he was driving his car in the left-hand westbound lane of Goddard at approximately the speed limit as he passed Oak. Bronson did not see a school bus in the area. However, he did see Lisa Nolan and Michael Nolan as they walked into the center lane together. Bronson was approximately 1½ car lengths away when he first saw them. Bronson heard, but did not see, his car strike Lisa Nolan as he drove past Lisa Nolan and Michael Nolan.

The only disputed issue of fact is whether Lisa Nolan was running across the two westbound lanes when she was struck by Bronson's car, or whether she was standing in the center lane when she was struck by Bronson's car.

II

Defendants brought motions for summary disposition under MCR 2.116(C)(10) in which they ar-

gued that as a matter of law Callaghan's alleged negligence could not have been the cause of Lisa Nolan's death because Lisa Nolan was discharged in a position of safety, and because Bronson actually saw Lisa Nolan before his car struck her. Defendant school district also argued that it is immune from liability because it is a governmental agency that was engaged in a governmental function and the alleged negligence did not involve the operation of a motor vehicle or the maintenance of an intentional nuisance. The trial court did not reach the governmental immunity issue but instead apparently ruled that (1) Callaghan did not have an obligation to prevent Lisa Nolan from getting off the bus on the south side of Goddard even though Callaghan knew that Lisa Nolan and the other students were crossing Goddard to reach their homes on the north side of Goddard, and (2) Callaghan's alleged breach of her obligation to prevent Lisa Nolan from getting off by way of the emergency exit was not a cause of Lisa Nolan's death. The trial court therefore granted the motions for summary disposition.

III

A motion for summary disposition brought under MCR 2.116(C)(10), based on the lack of a genuine issue of material fact, tests whether there is factual support for a claim. *W B Cenac Medical Service, PC v Michigan Physicians Mutual Liability Co,* 174 Mich App 676, 681; 436 NW2d 430 (1989). Considering the pleadings and evidence submitted by the parties, and giving the benefit of all reasonable doubt to the party opposing the motion, the trial court must determine whether the kind of record that might be developed at trial would leave open an issue upon which reasonable

minds could differ. *Id.* If there is no material factual dispute, the trial court must determine whether "the moving party is entitled to judgment . . . as a matter of law." MCR 2.116(C) (10). A trial court may not properly grant summary disposition where reasonable minds applying the law to the facts could differ as to whether a claim could be supported at trial. *DiFranco v Pickard,* 427 Mich 32, 54; 398 NW2d 896 (1986); *Cenac, supra,* p 681.

A

The elements of a negligence claim are (i) duty, (ii) general standard of care, (iii) specific standard of care, (iv) cause in fact, (v) legal or proximate cause, and (vi) damage. *Moning v Alfono,* 400 Mich 425, 437; 254 NW2d 759 (1977); *Hetterle v Chido,* 155 Mich App 582, 587; 400 NW2d 324 (1986). Normally, the court decides the questions of duty, general standard of care, and legal or proximate cause, while the jury decides the questions of cause in fact, specific standard of care, and damage. See *Moning, supra,* p 438; see also *DiFranco, supra,* p 54; *Hetterle, supra,* p 588.

"Duty is essentially a question of whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person." *Moning, supra,* pp 438-439. Assuming a duty, the standard of care may be established "specifically by mandate of statute, or it may arise generally by operation of law under application of the basic rule of the common law, which imposes on every person engaged in the prosecution of any undertaking an obligation to use due care, or to so govern his actions as not to unreasonably endanger the person or property of others." *Clark v*

*Dalman,* 379 Mich 251, 261; 150 NW2d 755 (1967). Assuming further that the defendant's conduct is a cause in fact of the plaintiff's injuries, the question of proximate cause "depend[s] on whether the conduct has been so significant and important a cause that the defendant should be legally responsible." *McMillan v State Hwy Comm,* 426 Mich 46, 51; 393 NW2d 332 (1986), emphasis omitted, quoting Prosser & Keeton, Torts (5th ed), § 42, pp 272-274; *Moning, supra,* p 438.

The questions of duty and proximate cause are interrelated because they both involve a policy determination of whether a legal obligation should be imposed on the defendant to protect the plaintiff against the damage the plaintiff actually suffered. See *McMillan, supra,* pp 51-52, quoting Prosser, *supra; Moning, supra,* pp 438-439. They are also interrelated "because the question whether there is the requisite relationship, giving rise to a duty, and the question whether the cause is so significant and important to be regarded a proximate cause both depend in part on foreseeability—whether it is foreseeable that the actor's conduct may create a risk of harm to the victim, and whether the result of that conduct and intervening causes were foreseeable." *Moning, supra,* p 439.

B

There is no dispute in this case on whether Callaghan owed *a* duty to Lisa Nolan. Unquestionably, there is a legal relationship between a school bus driver and a passenger/student such that the law imposes a legal obligation on the driver for the benefit of the passenger. In *Poe v Detroit,* 179 Mich App 564, 570; 446 NW2d 523 (1989), this Court noted that a common carrier has an obligation to discharge a passenger "in a reasonably safe

place." The legal relationship between a carrier and a passenger ends "once the passenger safely alights" from the bus and is "free to choose how to proceed to his next destination." *Id.* The dispositive question in this case then is whether that is the extent to which the policy of the law will recognize a duty and proximate cause when the relationship is that of school bus driver and passenger/student. See *McMillan, supra,* pp 51-52, quoting Prosser, *supra.*

C

Numerous statutes enacted by Michigan's Legislature specifically prescribe the equipment required on school buses, the distinctive painting and markings of school buses, inspection of school buses, and the qualifications of bus drivers. See MCL 380.1321 *et seq.*; MSA 15.41321 *et seq.*; MCL 257.1 *et seq.*; MSA 9.1801 *et seq.* The state board of education has also established safety specifications for school buses, inspection of school buses, and the qualifications of drivers. 1979 AC, R 340.1201 *et seq.,* 1981 AACS, R 340.1202 *et seq.,* and R 340.1251 *et seq.* See MCL 380.1343(1) and 388.1010; MSA 15.41343 and 15.1023(10). Local school boards are required to establish regulations governing the conduct of students for their safety while en route to and from school. MCL 380.1300; MSA 15.41300. The state board has ordered that students must comply with local rules and orders of the bus driver. 1981 AACS, R 340.1253. The Legislature has provided various methods of enforcing all of these. See, e.g., MCL 380.1311; MSA 15.41311 (suspend/expel student); MCL 380.1813; MSA 15.41813 (criminal sanctions against any person); MCL 388.1671(4); MSA 15.1919(971)(4) (withhold state aid to local board). These statutes

and rules indicate a strong public policy for a high degree of care in the transportation of students to and from school.

The strongest indication of the extent to which the policy of the law of this state will recognize a duty and proximate cause is § 682 of the Michigan Vehicle Code, MCL 257.682; MSA 9.2382, which provides in relevant part:

> (2) The driver of a vehicle overtaking or meeting a school bus which has stopped and is displaying 2 alternately flashing red lights located at the same level shall bring the vehicle to a full stop not less than 10 feet from the school bus and shall not proceed until the school bus resumes motion or the visual signals are no longer actuated. The driver of the school bus, before resuming motion, shall deactivate flashing lights and permit stopped traffic to proceed and shall, when resuming motion, proceed in a manner which will allow congested traffic to disperse by keeping the bus as near to the right side of the road as can be done with safety. Passengers crossing the road upon being discharged from a school bus shall cross in front of the stopped school bus. At an intersection where traffic is controlled by an officer or a traffic stop-and-go signal a vehicle need not be brought to a full stop before passing a stopped school bus, but may proceed past the school bus at a speed not greater than is reasonable and proper but not greater than 10 miles an hour and with due caution for the safety of passengers being received or discharged from the school bus. . . . The driver of a vehicle who fails to stop for a school bus as required by this subsection, who passes a school bus in violation of this subsection, or who fails to stop for a school bus in violation of an ordinance which complies with this subsection, is guilty of a misdemeanor.
>
> (3) A school bus driver shall not stop the bus for the purpose of receiving or discharging passengers, unless the bus is completely visible in its stopped

position to approaching or overtaking drivers of vehicles for a distance of at least 400 feet.

*  *  *

(5) A school bus transporting pupils . . . shall be equipped with . . . alternately flashing red lights located at the same level. The lights shall have sufficient intensity to be visible from a distance of not less than 500 feet in normal sunlight and shall be actuated by the driver of the school bus when, but only when, the vehicle is stopped and for a distance of at least 200 feet in advance of a stop for the purpose of receiving or discharging school children.

Generally, subsections (2) and (5) do not apply inside of incorporated cities or villages except as provided by local ordinance.

Section 682 clearly defines the duties of school bus drivers and motor vehicle drivers with respect to school bus passengers crossing the road. A school bus driver will be held legally responsible for injuries foreseeably caused by a proven failure of the bus driver to comply with § 682. See *Zeni v Anderson,* 397 Mich 117, 128-129; 243 NW2d 270 (1976), and *Klanseck v Anderson Sales & Service, Inc,* 426 Mich 78, 86-87; 393 NW2d 356 (1986) (violation of a penal statute is prima facie evidence of negligence). Thus, it must be conceded that under § 682 the school bus driver's duty of care extends further than simply discharging a passenger in a reasonably safe place.

The difficulty in this case stems from the fact that § 682 apparently does not apply in its entirety to this case, and, regardless, does not expressly prohibit a school bus driver from stopping a school bus in a parking lot to discharge passengers. According to defendants and the trial court, a school bus driver's duty of care under the circumstances in this case ends when the passenger alights safely

from the school bus. In other words, defendants would have this Court hold, in effect, that a school bus driver's clear duty under § 682 to do much more than simply discharge a passenger in a reasonably safe place is extinguished by discharging a passenger in a reasonably safe place five to ten feet off the road. Such a result, however, takes no account of the policy considerations which no doubt motivated the Legislature to enact § 682 in the first place.

As previously noted, a duty of care may be established by statute, or by the common law. The fact that a statute sets a standard of care under certain circumstances does not mean that under other similar circumstances there is no duty of care. A statute as applied in a negligence claim specifically defines the standard of care of a reasonable person under specific circumstances. See *Zeni, supra,* p 143; *Klansec, supra,* p 86. Where the statute is inapplicable, the common law still requires a person to act reasonably under the circumstances. See *Zeni, supra,* pp 137, 143; *Clark, supra,* p 261.

In a 1980 opinion, Michigan's Attorney General was asked whether it was negligent to discharge a child on one side of a divided highway knowing that the child would have to cross the other side of the divided highway without the protections of § 682. OAG, 1980, No 5825, pp 1105-1108 (December 9, 1980); see MCL 257.682(4); MSA 9.2382(4). We agree with the Attorney General's conclusion that a school bus driver who discharges passengers near a highway "knowing that [they] will have to cross the divided highway against moving traffic in order to reach their homes may be liable for negligence in discharging students at such a bus stop," depending upon all of the circumstances, including the *apparent* age, intelligence and expe-

rience of the passenger. We limit our agreement with that conclusion to the facts presented.

We conclude that a school bus driver may be held legally responsible for the safety of passengers discharged near a highway when the driver knows they must cross that highway to reach their homes. Since we rely primarily on § 682 for this conclusion, we limit our conclusion to circumstances analogous to circumstances governed by § 682, to the type of harm intended to be prevented by § 682, and to plaintiffs within the class of persons intended to be protected by § 682. See *Klanseck, supra,* p 87. The duty of care required of a school bus driver for the benefit of a passenger is the care a reasonable person would exercise under the circumstances. Under some circumstances, a school bus driver's duty of care will extend further than simply discharging a passenger in a reasonably safe place.

Under the circumstances of this case, a reasonable jury could conclude that Callaghan was negligent for failing to take any action to prevent Lisa Nolan and others from getting off by way of the emergency exit and crossing Goddard against moving traffic. Also, the alleged violations of state statutes, local ordinances, and school board rules and regulations regarding stopping of school buses, to the extent they apply, may present issues for the jury. We disagree with defendants' argument that the fact that Bronson saw Lisa Nolan before his car struck her automatically bars a finding that the alleged violations were a proximate cause of the accident.

The duty of care recognized in this opinion is not overly burdensome on school bus drivers, and it is not new. The state board of education and local school districts have for some time required school bus drivers to exercise a high degree of care

for the safety of passengers who must cross the highway after being discharged. A comprehensive manual provided by the state board to local school districts for use in their transportation programs recommends "that the school bus driver or a responsible person escort each *elementary* pupil, who must cross the road after exiting the school bus, to the centerline of the roadway to assure the safety of the pupil." Gustafson & Mitman, *Head School Bus Driver Reference Manual,* p 11 (East Lansing: Highway Traffic Safety Programs, Michigan State University, 1986), emphasis added; cf. *Price v Manistique Area Public Schools,* 54 Mich App 127, 131; 220 NW2d 325 (1974), lv den 393 Mich 753 (1974) (former school bus driver manual). According to the director of transportation for the Taylor School District, school bus drivers were required to enforce the school district's rule that students must get off a bus at their assigned bus stop. Additionally, school bus drivers were required to report any violations of student safety rules. The manual and school·district rules provide additional support for our conclusion that school bus drivers may be held legally responsible for the safety of passengers discharged near a highway when the driver knows they must cross that highway to reach their homes. See *Price, supra* (violation of duties imposed by rules and regulations is evidence of negligence).

IV

The determination whether defendant school district may be held liable for Lisa Nolan's death is complicated by the fact that "the maintenance and operation of a school bus system by a school district constitutes an immune governmental function." *Cobb v Fox,* 113 Mich App 249, 257; 317

NW2d 583 (1982), lv den 422 Mich 892 (1985); see MCL 691.1407(1); MSA 3.996(107) and MCL 380.1321 *et seq.*; MSA 15.41321 *et seq.* The motor vehicle exception to governmental immunity provides that "[g]overnmental agencies shall be liable for bodily injury . . . resulting from the negligent operation by any . . . employee of the governmental agency . . . of a motor vehicle" owned by the governmental agency. MCL 691.1405; MSA 3.996(105). Thus, even if Callaghan was negligent, defendant school district cannot be held liable unless the claimed negligence in this case involved operation of the school bus.

It is well established that a motor vehicle may be in operation for purposes of § 1405 even though it is not in motion. One test of whether a motor vehicle is in operation is based on a determination of whether it is "being used or employed in some specific function or to produce some desired work or effect." *Wells v Dep't of Corrections,* 79 Mich App 166, 169; 261 NW2d 245 (1977). A bus which is operated in the manner required by § 682 is clearly employed in a specific function or to produce a desired effect. The stopping of a school bus for the purpose of discharging passengers, and the bus driver's duties attendant to the stopping of the school bus, unquestionably constitute operation of a motor vehicle. Thus, plaintiff's claims relating to alleged violations of § 682 and similar local ordinances and school board rules and regulations are within the motor vehicle exception to governmental immunity. Moreover, plaintiff's claims relating to Callaghan's alleged negligent failure to control the manner in which students were discharged from her bus are inextricably intertwined with the alleged violations which clearly constitute operation of a motor vehicle. Therefore, those claims are

also within the motor vehicle exception to governmental immunity.

The cases of *Cobb v Fox, supra,* and *McNees v Scholley,* 46 Mich App 702; 208 NW2d 643 (1973), are factually distinguishable from this case. *Cobb* and *McNees* are unlike this case in that plaintiff has alleged, and there is evidence showing, that the school bus in this case was present at the scene of the accident discharging passengers in violation of duties imposed by statute, ordinance, and rules and regulations. We conclude that these differences bring plaintiff's allegations of negligent discharging of passengers within the motor vehicle exception. See *Dinh v Forest Hills Public Schools,* 129 Mich App 293, 299; 341 NW2d 510 (1983); see also *McNees, supra,* p 706, distinguishing *Earl W Baker & Co v Lagaly,* 144 F2d 349 (CA 10, 1944) (*Baker* held that discharging passengers is part of operation of bus).

v

On the basis of our analysis in parts III and IV of this opinion, we conclude that the trial court erred when it granted defendants' motions for summary disposition.

Reversed and remanded for proceedings consistent with this opinion.