OPINION
This case is before us on the appeal of Derika Glover and Billie Webb from a summary judgment entered in favor of the Dayton Public Schools and Terry Johnson. The summary judgment decision was based on the Defendants' immunity from liability under R.C. Chapter 2744. According to the largely undisputed facts, Derika Glover was a kindergarten student in the Dayton Public Schools system and was transported to and from school by a Dayton Public Schools bus during the 1996-97 school year. At the time, Derika lived on the north side of McCall Street, close to the intersection of McCall and Chicahominy. This intersection is a "T" intersection, with Chicahominy forming the base of the T. McCall is a busy two-lane street and does not have a traffic signal, crosswalk, or crossing guard at the intersection. Chicahominy does have a stop sign, for traffic entering McCall from the south.
In the morning, Derika's bus stop was on Chicahominy, at the stop sign, meaning that she had to cross McCall Street to reach the stop. During the afternoon, the bus traveled west on McCall and turned left onto Chicahominy. Derika, her brother, Nicholas, and another child were then dropped off on Chicahominy in front of an office to the Arlington Courts apartment complex. Thus, in order to get home, Derika and Nicholas again had to cross McCall, without benefit of traffic lights, crosswalk, or a crossing guard. There is no dispute that Derika's mother, Billie Webb, routinely walked her children to the bus stop in the mornings and waited for them to return in the afternoons. However, on September 20, 1996, Webb had to use the restroom at the time the bus was due. As a result, she asked her twelve year old son, Michael, to wait in her place and escort the younger children home.
On September 20, 1996, Terry Johnson was the bus driver regularly assigned to Derika's route. On that day, Johnson left school and made several stops before turning onto McCall. Johnson traveled westbound on McCall, making one stop on the north side of McCall, about a block east of Chicahominy. This stop was not at an intersection. Next, Johnson made a left turn onto Chicahominy and stopped immediately after he turned. When Johnson stopped the bus, Derika and Nicholas started to get off. At the time, school policy required kindergarten children to be kept on the bus unless a responsible adult or an older child was present. As a result, Johnson told the two children to wait because he could not see their mother. However, at that point, some girls in the back of the bus told Johnson that Derika's older brother was waiting at the corner. After confirming this with Derika, Johnson let Derika and Nicholas leave the bus. He waited until Derika and her brother reached the curb and started running toward their brother. Then, he proceeded down Chicahominy to his next stop.
At around the same time, Yvette Reed was traveling east on McCall to pick up her son from school. As Reed approached the intersection of Chicahominy and McCall, she noticed a van parked on McCall, on the southwest corner. She did not see any children. Suddenly, a little girl darted out in front of Reed's car, and Reed was unable to stop. The little girl (Derika) was struck by Reed's front bumper and rolled into the other lane of traffic. Shortly before the accident, Webb finished using the restroom and came to the front door of her house. At that time, Webb saw Derika running into the road and also saw the car hit her daughter.
In the meantime, Johnson had reached his second stop on Chicahominy. He was then told by some of the students in the bus about the accident and immediately turned the bus around to return to the accident scene. When he arrived, he saw fire trucks coming down the road. Johnson could not see Derika, but did see Webb chasing Derika's older brother down the middle of the street, with a shoe in her hand. After the accident, Derika was taken to the hospital, where surgery was performed on her leg. Derika spent approximately two months in a partial body cast and returned to school in January, 1997. Johnson was a new bus driver who had been hired in the summer of 1996. He indicated that no one had complained to him about the route. However, Webb testified that she had called the school previously to say that she wanted the bus stop changed. Webb's call or calls had occurred from the time Webb's son, Nicholas, had been in school (Nicholas was in the first grade at the time of the accident). Webb had also talked to a bus driver, but was told that the stop was a scheduled one and could not be changed. Apparently, this conversation took place during the preceding school year, as the new bus driver (Johnson) did not recall having any conversations of this sort with anyone, and Webb did not identify Johnson as the individual to whom she had spoken.
At the time of the accident, Dayton Public Schools used a computer system for routing. This system allowed the district to define nodes for bus stops and to also define hazards. However, four lane streets were the only hazards that the district chose to designate. The system could also generate maps as well as information on each student's address, including the side of the street on which the student lived. According to the routing specialist in charge of bus routes for Dayton Public Schools in 1996, if a student lived on the north side of McCall, a stop should have been established on McCall so that the bus could signal and stop traffic on McCall. This specialist further testified that if a child has to cross the street to get to the residence side of the street, the driver should stay stopped, with lights on, until the child crosses in front of the bus. And finally, the specialist said that dropping Derika off on Chicahominy and requiring her to cross over to the north side of McCall would violate safety regulations and requirements.
As was noted, based on these facts, the trial court granted summary judgment in favor of Johnson and the Dayton Public Schools. First, the court found that liability potentially existed under R.C. 2744.02(B) (1), which allows political subdivisions to be held liable for injury or loss to person or property caused by negligent operation of motor vehicles by employees. Although Johnson had already discharged Derika from the bus, the court concluded that the definition of "operating a motor vehicle" included the task of delivering children to their designated stops. However, despite this finding of potential liability, the court decided that the Defendants were entitled to immunity under R.C. 2744.03(B) (3), which provides certain defenses to civil actions brought against political subdivisions. In this regard, R.C. 2744.03(B) (3) indicates that:
 [t]he political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee.
In particular, the court focused on the fact that route-planning was a matter of discretion on the part of the bus drivers and other employees. As an additional point, the court found Johnson immune because there was no evidence that he had "purposefully, willfully, or recklessly" attempted to injure Glover. See, R.C. 2444.03(B) (6) (b). Derika and Webb now appeal, raising the following single assignment of error:
I. The trial court erred as a matter of law in granting immunity to the Dayton Public Schools when it violated mandatory state requirements for the operation of buses.
I. Appellants' primary contention in support of the appeal is that establishing and operating bus stops for the school system are not discretionary acts. Appellants claim that instead, R.C. 4511.76(C), Ohio Adm. Code 3301-83-13(B), and Ohio Adm. Code 4501-3-06 (now repealed) create mandatory rules for the operation of buses. Specifically, R.C.4511.76(C) prohibits operation of buses in violation of the rules of the department of education. Included in these rules at the time of the accident was a provision that if school bus passengers must cross the road at a point "not under the control of a traffic officer or clearly visible electric or mechanical traffic signal," the passengers are to cross the highway ten feet in front of the standing bus. Further, the bus is not to be started until all passengers are on their residence side of the road. Ohio Adm. Code4501-3-06(E). Because these are not matters of discretion, but are mandatory, Appellants contend that the immunity defense outlined in R.C.2744.03(B) (3) does not apply.
In response, Dayton Public Schools and Johnson make several points. First, they argue that the trial court erred in initially removing their immunity under R.C. 2444.02(B). Specifically, they claim that since Derika was safely transported to the bus stop and was discharged, her accident did not arise from Johnson's "negligent operation of a motor vehicle." They also argue that even if the trial court's definition of operating a motor vehicle is used, i.e., "the task of delivering students to their designated bus stops," Johnson did not deviate from this task. In fact, he delivered Derika precisely where he was told.
As an additional point, Dayton Public Schools and Johnson contend that statutes allowing for adoption of school bus regulations do not impose civil liability on the board of education for failing to comply with the regulations. They further claim that even if administrative regulations are applicable, the regulations allow discretion in the planning and establishment of bus stop locations. And finally, they argue that Johnson was simply complying with Ohio Adm. Code 4501-6-28, which requires drivers to use established routes and to make stops only at points designated by the school authority.
We believe the threshold inquiry is not whether the acts were mandatory or discretionary, but is instead whether an exception to immunity even applies. In this regard, we have noted on a number of occasions that R.C. 2744.02
grants blanket immunity to political subdivisions, including school systems, subject only to the five exceptions listed in subsection (B) of the statute. See, e.g., Farra v. Dayton (1989), 62 Ohio App.3d 487, and Feitshans v.Darke County, Ohio (1996), 116 Ohio App.3d 14, 22. Consequently, R.C.2744.03 does not provide a separate basis for liability against the school district, and is relevant only if one of the listed exceptions to immunity in R.C. 2744.02(B) has first been found to exist.62 Ohio App. 3d at 496-97, and 116 Ohio App.3d at 22. Accord, Sudnik v. Crimi (1997),117 Ohio App.3d 394, 398-99. The Ohio Supreme Court also indicated inWilson v. Stark Cty. Dept. of Human Serv. (1994), 70 Ohio St.3d 450,452, that "R.C. 2744.02(A) (1) creates a broad immunity, subject to enumerated exceptions." Therefore, unless Dayton Public Schools is potentially liable under one of the exceptions to immunity in R.C.2744.02(B) (1) through (5), the discretionary or mandatory nature of decisions about bus stop locations is irrelevant.
As we mentioned, the trial court found the school system potentially liable under R.C. 2744.02(B) (1), which states that
 [e]xcept as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees upon the public roads when the employees are engaged within the scope of their employment and authority.
Previously, we have rejected an attempt to apply this exception to a school board's location of a bus stop. See, Sears v. Saul (Feb. 19, 1999), Montgomery App. No. 17102, unreported, application for dismissal of discretionary appeal granted, 85 Ohio St.3d 1493. In Sears, a pupil was killed while trying to cross a highway to reach a median strip where he and his classmates ordinarily waited for the school bus. Among the allegations in the suit were that the school board and its employee placed the bus stop at an inherently dangerous location and that they negligently, willfully, and recklessly continued to keep the stop at that location. Id. at p. 2. Because the case was essentially based on the defendants' acts of officially locating, and perhaps unofficially changing the bus stop location, we decided that the situation was too narrowly confined to fit within liability for "`operation' of a motor vehicle" under R.C. 2744.02(B) (1). Id. The same reasoning would apply here, as this case is based on the alleged improper location of the bus stop and the negligence or recklessness of Dayton Public Schools and Johnson in continuing to use a dangerous drop-off point.
Similarly, in Turner v. Central Local School Dist. (Sept. 5, 1997), Wyandot App. No. 4-97-13, unreported, affirmed in part and reversed in part (1999), 85 Ohio St.3d 95, the Third District held that a bus driver's decision to alter the route taken by the school bus was "not part of the operation of a motor vehicle on the roadways." Id. at p. 3. As in the present case, the driver discharged the student with no immediate problem and proceeded with her route. Based on these facts, the Third District found that the motor vehicle exception in R.C. 2744.02(B) (1) did not apply.
To the extent that Johnson's act of discharging Derika in violation of various administrative provisions and statutes is alleged to have been negligent and within the scope of "operation" of a motor vehicle, Groves v.Dayton Public Schls. (Mar. 31, 1999), Montgomery App. No. 17391, unreported, is also instructive. In Groves, we considered the definition of "operation of any motor vehicle" under Chapter 2744, and found that it could encompass more than the mere act of driving a vehicle. Specifically, we decided that operation of a wheelchair ramp and assisting wheelchair- bound students on and off a bus could be interpreted as part of the driver's operation of the bus. Id. at p. 3. Of note is the fact that the injuries received by the student in Groves appeared to have occurred as she was physically leaving the bus. (The reason we say "appeared" is that the case was before the court on a motion to dismiss and the facts were not fully developed.)
Some disagreement exists among various jurisdictions, and even in Ohio, about how "operation of a motor vehicle" should be interpreted for purposes of the motor vehicle exception to immunity. For example, in Perales v.City of Toledo (Apr. 23, 1999), Lucas App. No. L-98-1397, unreported, the Sixth District adopted a more restrictive interpretation than we used inGroves. First, the Sixth District discussed the ordinary meaning of the terms used in R.C. 2744.02(B) (1), and then considered the definition of "motor vehicle" in the Ohio Revised Code. After evaluating these matters, the Sixth District agreed with the trial court that the exception was "`meant to apply to collisions caused by motor vehicles driven by employees of the political subdivision engaged within the scope of their employment and authority.'" Id. at p. 2. As a result, the court held that police officers who sat in marked cars and failed to clear a crowd by using their vehicles did not fall within the exception for negligent operation of motor vehicles. Notably, the court relied on a definition of "operation" similar to what we cited in Groves, i.e., "to work" and "to perform a function." Id. at p. 3. Compare with Groves, supra, at p. 3. However, our approach inGroves was not to look at the ordinary meaning of the terms. Instead, we focused on how the term "operation of a motor vehicle" had been used in other jurisdictions, primarily Michigan.
Groves is consistent with a more expansive view used in other jurisdictions. See, e.g., Nolan v. Bronson (1990), 185 Mich. App. 163,460 N.W.2d 284 (under certain circumstances, operation of a motor vehicle can occur even if a bus is not in motion), and Roberts v. Burke Cty. Schl.Dist. (1997), 267 Ga. 665, 482 S.E.2d 283 ("use" of school bus can reach beyond actual physical contact but does not include idea of remoteness). On the other hand, Perales is consistent with the restrictive view adopted by the Pennsylvania Supreme Court in White v. Schl. Dist. Of Philadelphia
(1998), 553 Pa. 214, 718 A.2d 778, i.e., that the motor vehicle exception applies only to acts directed toward physically moving a vehicle.
Although Groves and Perales appear to conflict, we need not resolve the conflict for purposes of the present case. Even if we use the broader interpretation of Groves or other cases, the fact is that the injury in the present case did not occur during Derika Glover's physical discharge from the bus, or even when the bus was present. In fact, the bus was two stops away when the accident occurred. By contrast, the injury in Groves arose from the driver's actions in physically operating the lift ramp to the bus or in physically helping the student alight from the bus while the bus was still at the scene. In our opinion, the facts of the present case do not fit within the "operation of any motor vehicle," as that term has been interpreted. Although we agree with our prior decision in Groves that "operation" can encompass more than simply driving a vehicle, we also believe that the interpretation of this exception must be reasonably restricted, particularly in view of the Ohio Supreme Court's observation that "[t]he manifest statutory purpose of R.C. Chapter 2744 is the preservation of the fiscal integrity of political subdivisions."Wilson, supra, 70 Ohio St.3d 450, at 453.
Furthermore, our interpretation, even when restricted, is still consistent with Groves and with decisions in other jurisdictions construing the term "operation of a motor vehicle" in the context of exceptions to sovereign immunity. In Groves, we relied on Nolan, supra, in which the court had said that "stopping a school bus for the purposes of discharging passengers and the bus drivers' duties attendant to the stopping of the bus unquestionably constitute operation of a motor vehicle." 460 N.W.2d at 291. Read broadly, this holding could encompass virtually any acts related to the discharge of passengers, including those alleged in the present case. However, a close reading of Nolan reveals that the court did not intend its holding to be interpreted so expansively. Unlike the current case,Nolan involved a situation in which a school child was injured while the school bus was present and was still unloading passengers. Significantly,Nolan explicitly relied on this fact to distinguish other Michigan decisions that had rejected the motor vehicle exception. Concerning these other decisions, the Nolan court said:
 [they] are unlike this case in that plaintiff has alleged, and there is evidence showing, that the school bus was present at the scene of the accident discharging passengers in violation of duties imposed by statute, ordinance, and rules and regulations. We conclude that these differences bring plaintiff's allegations of negligent discharging of passengers within the motor vehicle exception.
Id.
Cobb v. Fox (1982), 113 Mich. App. 249, 317 N.W.2d 583, was one of the cases distinguished in Nolan. In Cobb, an eight-year-old child was discharged at a bus stop across from his home and was required to walk across a heavily traveled road to get to his residence. Another bus stop was located on the student's residence side of the road, but was about two blocks farther away from the student's home. Parents had petitioned the school board for a second bus stop on the student's residence side of the road (and nearer to his house). However, the request was rejected because the superintendent felt the students could walk the extra two blocks if they wished to leave the bus on the side of their own homes. As in the present case, the mother in Cobb was normally present to meet her children. Unfortunately, on the day in question, the mother saw her children get off the bus and then stepped momentarily into her house. At that point, her eight year old son darted into the road and was killed by a car. By the time of the accident, the bus was at least two blocks away.317 N.W.2d at 584-85.
Under these facts, the Michigan Court of Appeals rejected the motor vehicle exception to governmental immunity because the school bus was not present at the time and place of the accident. Id. at 589. Likewise, the other case distinguished in Nolan (McNees v. Scholley (1973),46 Mich. App. 702, 208 N.W.2d 643), rejected the motor vehicle exception where a student was hit and killed by a car while waiting for the bus to arrive. Again, the concept stressed was that the vehicle must be "in a state of being at work" at the time and place the injury was inflicted before the exception could apply. 208 N.W.2d at 645.
In light of the above discussion, we find that neither the planning and implementation of bus routes nor the bus driver's alleged negligence in discharging Derika fit within the exception to immunity for operation of any motor vehicle. Accordingly, the trial court erred in finding Dayton Public Schools potentially liable under R.C. 2744.02(B) (1). However, the error was harmless because the court did ultimately grant summary judgment in favor of the school system.
The only other potential ground of liability regarding the school district is the exception in R.C. 2744.02(B) (5), which provides that:
 [i]n addition to the circumstances described in divisions (B) (1) to (4) of this section, a political subdivision is liable for injury, death, or loss to person or property when liability is expressly imposed upon the political subdivision by a section of the Revised Code, including but not limited to, sections 2743.02 and 5591.37 of the Revised Code. Liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon a political subdivision, because of a general authorization in that section that a political subdivision may sue and be sued, or because that section uses the term "shall" in a provision pertaining to a political subdivision.
As we mentioned, Derika and Webb rely on this section, and contend that R.C.4511.76(C) and various administrative regulations expressly impose liability on school districts. In this regard, R.C. 4511.76(C) provides that: "[n]o person shall operate a school bus within this state in violation of the rules of the department of education or the department of public safety." At the time of Derika's accident, the rules of the department of education included certain requirements for the operation and unloading of buses. Specifically, Ohio Adm. Code 4501-3-06 (now repealed) provided that:
 The following procedures shall be adhered to in loading and unloading passengers.
* * *
 (D) In receiving and discharging passengers on the highway the bus shall be driven to the extreme right side of the paved or traveled portion of the roadway and brought to a full stop, with the flasher or warning lights in operation the full time that the bus remains stationary except where otherwise regulated by an incorporated municipality.
 (E) Whenever a school bus stops to discharge passengers who must cross the road at a point not under the control of a traffic officer or clearly visible electrical or mechanical traffic signal, the passengers shall cross the highway at a point ten feet in front of the standing bus. The bus shall not be started until the passengers are safely on their residence side of the road.
* * *
 (G) The bus driver shall be the sole operator of the entrance door and shall not open the door until traffic has cleared the bus in both directions; passengers who must cross the highway to reach their destination shall cross in front of the stopped bus after the driver has verified that the warning lamps are operating and has told them it is safe to cross.
* * *
 (H) The door shall not be closed and the bus started again until such passengers have reached their residence side of the road.
Further, Ohio Adm. Code 3301-83-13(B) states, in pertinent part, that:
 (1) School bus stop locations shall provide for the maximum safety of pupils giving consideration to distance from residence, traffic volume, physical characteristics, visibility, and weather conditions.
 (2) School bus stops shall be established on the residence side of all four-lane highways and on the residence side of other roadways posing potential hazards to students as determined by school bus owners.
* * *
 5) Each pupil shall be assigned a residence side designated place of safety. Driver must account for each pupil at designated place of safety before leaving. Pupils are not to proceed to their residence until the school bus has departed.
Glover and Webb contend that these provisions impose mandatory duties on the school and on bus drivers. By contrast, Dayton Public Schools and Johnson argue that these requirements do not apply when the bus route sheet instructs a driver to discharge a student onto a non-residential street to the care of a sibling. They also claim that Ohio Adm. Code 3301-83-13(B) does not impose mandatory duties, but instead gives school districts discretion to determine proper drop-off points. And finally, Dayton Public Schools and Johnson point to the fact that Ohio Adm. Code 3301-83-20(B) requires bus drivers to "use the established route and make stops only at points designated by the * * * administrator who is authorized to designate such stops." In this regard, they stress that Johnson complied with this regulation by following the route sheet given to him by the school district.
Again, we need not consider if the duties imposed by statute or regulation are discretionary or mandatory unless an exception to immunity applies. InSargi v. Kent City Bd. of Edn. (6th Cir. 1995), 70 F.3d 907, the Sixth Circuit Court of Appeals held that R.C. 4511.76 did not expressly impose liability for purposes of R.C. 2744.02(B) (5). Likewise, in Turner,supra, the Third District found that regulations for the operation of a school bus did not create an exception to immunity under R.C. 2744.02(B)(5). The regulation in question in Turner was Ohio Adm. Code 3301-83-20, which the court interpreted as mandatory on the issue of routes and approximate times at which children could be dropped off at their homes.
Despite concluding that Ohio Adm. Code 3301-83-20 removed discretion as to route times, the Third District rejected the argument that the violation of the regulation created an immunity exception under R.C. 2744.02(B) (5). Specifically, the court reasoned that "in order to be an exception, * * * the statute itself must expressly impose this liability." Id. at p. 3 (citation omitted). In this context, the statute the plaintiffs had relied on was R.C. 4511.99, which imposed criminal liability on school boards that did not comply with regulations for operation of school buses in non-discretionary matters. Id. Criminal liability, however, is not the same as civil liability for damages resulting from breach of the duty imposed by the statute.
The result in Turner is similar to our decision in Farra, supra, which rejected a claim that R.C. 163.03 expressly imposed liablity for purposes of R.C. 2744.02(B) (5). 62 Ohio App.3d at 496. Notably, even though R.C.163.03 required restitution for actual damages caused by certain actions of a political subdivision, the statute did not expressly provide for damages for the subject matter of the suit in question, i.e., intentional interference with an individual's business interests. Id. Consequently, we found in Farra that the immunity exception in R.C. 2744.02(B) (5) would not apply. Likewise, in Colling v. Franklin Cty. Children Serv. (1993),89 Ohio App.3d 245, the Tenth District held that various statutes, including the prohibition against child endangerment and the wrongful death statute, did not expressly impose liability for purposes of R.C.2744.02(B) (5). Id. at 253.
Most of these cases are based on difficult facts, like injury to an innocent party. For example, Colling involved the unfortunate drowning death of a child in the custody of the child services agency. Although the results seem harsh, we believe they are required by the immunity statute, especially when one considers the two sections of the Revised Code (R.C.2743.02 and R.C. 5591.37), which are listed as examples of "express imposition of liability" in R.C. 2744.02(B) (5). In this context, R.C.2743.02 provides that "[t]he State hereby waives its immunity from liability and consents to be sued." Similarly, R.C. 5591.37 states that "[n]egligent failure to comply with section 5591.36 of the Revised Code shall render the county liable for all accidents or damages as a result of that failure." By contrast, R.C. 4511.76(C) prohibits the operation of school buses in violation of department of education rules, but does not impose civil liabilty for the violation. Accordingly, we conclude that R.C.4511.76(C) does not expressly impose liability for purposes of the immunity exception in R.C. 2744.02(B) (5). Therefore, because no immunity exception applies, the trial court correctly granted summary judgment to the school district, although it did so for the wrong reasons.
As a final matter, we note that the Third District in Turner appears to have decided that R.C. 4511.75(E) expressly imposes liability for purposes of R.C. 2744.02(B) (5), or at least that is the only conclusion we can reach after reading the opinion. The facts in Turner were that a bus driver altered the usual bus route and dropped a second grade student at home about thirty minutes earlier than normal. Although the child assured the driver that he had a key to his house, this was not true. Instead, the child tried to enter the house through his bedroom window and was suffocated when the window fell. Id. at p. 1. In the trial court, the school district was awarded summary judgment on the basis of sovereign immunity. As we mentioned earlier, when the case was appealed, the Third District rejected the immunity exception for negligent operation of a motor vehicle, as well as the exception for liability expressly imposed by statute (the statute in question being R.C. 4511.99 and mandatory regulations for bus routes). Immediately after rejecting the latter exception, the court commented that:
 [h]owever, R.C. 4511.75(E) states that "No school bus driver shall start his bus until after any child * * * has reached a place of safety on his residence side of the road." Here, there is a genuine issue of fact as to whether Andrew [the second grade student] had reached a place of safety before the driver left. * * * Both parties agree that if R.C. 4511.75(E) was violated, Central [the school district] would not be immune from suit. Based on the record before us, we find that a reasonable person could find that Andrew was not left in a place of safety, thus violating R.C. 4511.75(E). Since a genuine issue of material fact exists as to whether immunity applies, summary judgment was inappropriate in this case.
Id. at p. 3. The court then reversed the summary judgment and remanded the case for further proceedings. Although the court did not further elaborate on its decision, the court's remarks and the result obviously imply that R.C. 4511.75(E) expressly imposes liability for purposes of the immunity exception in R.C. 2744.02(B) (5).
Subsequently, the Ohio Supreme Court reversed the Third District in part and affirmed in part. See, Turner v. Central Local School Dist. (1999),85 Ohio St.3d 95. The reversal was based on trial court error in allowing the school district to amend its answer to raise the defense of sovereign immunity. This defense was not originally pled, but was asserted only after the case had been appealed on the issue of foreseeability. After the school district lost on foreseeability in the court of appeals, the case was remanded and the school district asked for permission to amend its answer. The trial court allowed the amendment and then granted summary judgment for the school district on the basis of immunity. Another appeal was taken, which resulted in a finding by the Third District that the trial court did not abuse its discretion in allowing the amendment. However, the Ohio Supreme Court disagreed, stating that the attempt to amend was "prejudicial and untimely." Id. at 99.
On the other hand, the Ohio Supreme Court agreed with the Third District that factual issues existed concerning the violation of R.C. 4511.75(E). During the discussion of this point, the court rejected the claim (made by the school district and amicus curiae, Ohio School Boards Association), that the duty imposed by R.C. 4511.75(E) ends when a pupil is discharged from the bus and reaches a place of safety on his residence side of the road. Instead, the court noted that "[a] young child being dropped off thirty minutes earlier than expected without any notification to the parents who are not in the house creates a high potential for danger." Id. at 101. Accordingly, the court remanded the case for trial on the issues of common-law negligence and the relevant statutory and administrative principles that were argued below. Id. Although the Third District's finding on factual issues was affirmed, the Ohio Supreme Court did not mention or consider whether R.C. 4511.75(E) expressly imposes liability for purposes of R.C. 2744.02(B) (5). The reason for the lack of discussion is that the court did not need to consider immunity exceptions. Specifically, the court had already found Chapter 2744 inapplicable due to the school district's waiver of the defense. Id. at 100.
Inexplicably, neither party in our own case has raised the applicability of R.C. 4511.75(E), nor has anyone cited either decision in Turner. Nonetheless, we cannot ignore the issue, since it has been disclosed by our own research. After examining R.C. 4511.75(E), we believe the statute is directly relevant. As we noted above, the statute says that "[n]o school bus driver shall start his bus until after any child * * * who may have alighted therefrom has reached a place of safety on his residence side of the road." Clearly, the statute imposes a duty on the driver (and thus, on the school district), to ensure that children reach a place of safety on their residence side of the road. Just as clearly, the duty was violated.
In this regard, the record indicates that Billie Webb complained both to the school and to a bus driver about the fact that her children were required to cross the highway to reach their home. Nothing was done about the situation; instead, Webb was told the route could not be changed. However, other children were dropped off on the north side of McCall, only one block east of Chicahominy, and the bus did stop in the middle of the block, where no intersection was located. Thus, the school district could possibly have prevented the accident by dropping Derika and her brother off on the north side of McCall, just short of the intersection with Chicahominy. Then, after the children were safely discharged on their residence side of the road, the bus could have made its customary left turn onto Chicahominy. However, despite these facts, R.C. 4511.75(E) cannot be used to trigger the immunity exception in R.C. 2744.02(B) (5). Just like R.C. 4511.76(C), R.C. 4511.75(E) imposes a duty, but does not provide for civil liability if the duty is violated. Therefore, while the result in this case may be unfortunate, we cannot "stretch the language" of the statute to achieve a different outcome. Farra, supra, 62 Ohio App.3d 487, 496.
Because none of the five exceptions in R.C. 2744.02(B) apply, Dayton Public Schools is immune from liability for the injury to Derika Glover. Accordingly, the trial court did not err in granting summary judgment in favor of the school district.
A somewhat different analysis applies with regard to Johnson's potential liability, as R.C. 2744.02(A) (2) mentions only the immunity of political subdivisions, not their employees. See, McGuinness v. Hooper (Feb. 6, 1998), Montgomery App. No. 16651, unreported. As a preliminary point, we note that the single assignment of error contained in the Appellant's brief refers only to the school district and not to Johnson, the bus driver. However, because the appeal was taken from the trial court's summary judgment decision and because Johnson's liability was discussed during the argument portion of Appellant's brief, we will consider the issue of Johnson's liability. In this regard, R.C. 2744.03 states, in pertinent part, that:
 (A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:
* * *
 (3) The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee.
* * *
 (5) The political subdivision is immune from liability if the injury, death, or loss to persons or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.
 (6) In addition to any immunity or defense referred to in division (A) (7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies:
 (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
 (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
 (c) Liability is expressly imposed upon the employee by a section of the Revised Code. Liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term "shall" in a provision pertaining to an employee.
As we mentioned earlier, the trial court found the school district immune under R.C. 2744.02(A) (3) because the district's acts in planning and establishing routes were discretionary. However, we do not reach that issue because we have previously found the district immune under R.C. 2744.02(A). The trial court also found that Johnson was not liable because there was no evidence that Johnson acted outside the scope of his employment or that he acted recklessly or maliciously. Although the court did not specifically cite R.C. 2744.03(A) (6), the court used terms from that section of the statute in rejecting the claims against Johnson. As a result, we believe the court relied on this section. We also believe the trial court's findings were correct. First of all, the immunity exception in R.C.2744.03(A) (6) (a) is inapplicable because Johnson was clearly acting within the scope of his responsibilities as a bus driver. Second, even if Johnson's conduct may have been negligent, there is simply no evidence that his actions were done with malicious purpose, were in bad faith, or were wanton or reckless. In particular, Johnson drove the route as assigned by the school district and released Derika into the care of her older brother, as required by school policy. Although the administrative rules and statutes may have required discharge at a different point, the record is devoid of any evidence that Johnson knew of these requirements and disregarded them. Consequently, the exception to immunity in R.C.2744.03(A) (6) (b) is inapplicable as well.
Finally, R.C. 2744.03(A)6) (c) provides an immunity exception virtually identical to the one found in R.C. 2744.02(B) (5), i.e., employees are immune unless liability is expressly imposed by a section of the Revised Code. For the reasons previously mentioned in connection with the school district's liability under R.C. 2744.02(B) (5), we find that neither R.C.4511.76(C) nor R.C. 4511.75(E) expressly imposes liability on school employees. Accordingly, the immunity exception in R.C. 2744.03(A) ((6) (c) is also inapplicable to Johnson.
Because none of the immunity exceptions in R.C. 2744.03(A) (6) apply, Johnson is not subject to individual liability for the injury to Derika Glover. Therefore, the trial court correctly granted summary judgment in Johnson's favor.
Based on the preceding discussion, the single assignment of error is overruled and the judgment of the trial court is affirmed.
YOUNG, J., concurs.