**[This opinion has been published in *Ohio Official Reports* at 73 Ohio St.3d 666.]**

FAHNBULLEH, APPELLANT, *v.* STRAHAN; CITY OF COLUMBUS ET AL.,
APPELLEES.

[Cite as *Fahnbulleh v. Strahan*, 1995-Ohio-295.]

*Political subdivisions—Tort liability—R.C. 2744.02(B)(1) is constitutional.*

R.C. 2744.02 (B)(1) is a constitutional exercise of legislative authority which does
not violate the guarantees of equal protection of the Ohio and United States
Constitutions.

(No. 94-672—Submitted April 19, 1995—Decided September 13, 1995.)

APPEAL from the Court of Appeals for Franklin County, No. 93AP-956.

———————————

{¶ 1} On October 17, 1992, plaintiff-appellant, Duraman Fahnbulleh, was injured when his automobile was struck by a fire truck belonging to the Columbus Division of Fire and operated by appellee Scott Strahan. Appellant was stopped at a stop sign when the emergency vehicle made an improper left turn at the intersection and struck appellant's vehicle. Appellees, the city of Columbus and Scott Strahan, claimed immunity pursuant to R.C. 2744.02. Appellant contacted his uninsured motorist carrier, Leader National Insurance Company, which denied uninsured motorists coverage, claiming the tortfeasors were immune from liability.

{¶ 2} On April 21, 1993, appellant brought suit against appellees alleging ordinary negligence and also sought declaratory judgment against Leader National Insurance for uninsured motorists coverage. The complaint did not allege that Strahan was acting outside the scope of his employment, acting with a malicious purpose, in bad faith, or in a wanton and reckless manner. Nor was it alleged that the appellees were expressly liable pursuant to any other section of the Revised Code.

**{¶ 3}** The Franklin County Court of Common Pleas found that appellant had failed to state a claim upon which relief could be granted against appellees, and granted Leader National Insurance's motion for summary judgment, after finding appellees' immunity precluded recovery of uninsured motorists benefits.

**{¶ 4}** The court of appeals affirmed the decision. After this court accepted the matter on July 13, 1994, appellant reached a settlement with Leader National Insurance on August 25, 1994, and filed a notice of voluntary dismissal as to Leader National Insurance.

**{¶ 5}** The cause is before this court pursuant to the allowance of a discretionary appeal.

---

*Barkan & Barkan Co., L.P.A.*, *Neal J. Barkan* and *Daniel J. Allen*, for appellant.

*Ronald J. O'Brien*, City Attorney, and *Mary E. Johnson*, Assistant City Attorney, for appellees.

---

**GWIN, J.**

I

**{¶ 6}** Appellant contends the court of appeals erred in affirming the trial court's ruling on appellees' motion to dismiss, pursuant to Civ.R. 12(B)(6). The trial court found that both appellees were immune from liability pursuant to R.C. 2744.02. The appellate court cited *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753, wherein this court held: "In order for a court to dismiss a complaint for failure to state a claim upon which relief may be granted, it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." *Id.* at syllabus.

**{¶ 7}** A complaint should not be dismissed for failure to state a claim merely because the allegations do not support the legal theory on which the plaintiff relies.

2

Instead, a trial court must examine the complaint to determine if the allegations provide for relief on any possible theory. See *Patriarca v. Fed. Bur. of Investigation* (D.R.I 1986), 639 F.Supp. 1193. A court must construe all material allegations in the complaint and all inferences that may be reasonably drawn therefrom in favor of the nonmoving party. *Phung v. Waste Mgt., Inc.* (1986), 23 Ohio St.3d 100, 23 OBR 260, 491 N.E.2d 1114. Thus, a court must presume all factual allegations in the complaint are true for purpose of the motion. *Bridges v. Natl. Eng. & Contracting Co.* (1990), 49 Ohio St.3d 108, 551 N.E.2d 163.

{¶ 8} We agree with the court of appeals that appellant's complaint contains no factual allegations that would remove appellees from the protection of R.C. 2744.03, which statute sets forth the defenses a political subdivision may use to avoid liability in connection with governmental or proprietary functions. Thus, unless the statute conferring immunity is unconstitutional, appellees are immune from liability.

II

{¶ 9} Appellant urges that R.C. 2744.02 is unconstitutional, and should be found void as violative of public policy as it is applied to this case.

{¶ 10} Historically, the doctrine of sovereign immunity protected political subdivisions from liability. In Ohio, the doctrine of sovereign immunity as to a municipal corporation was judicially abolished in *Haverlack v. Portage Homes, Inc.* (1982), 2 Ohio St.3d 26, 2 OBR 572, 442 N.E.2d 749. However, in *Strohofer v. Cincinnati* (1983), 6 Ohio St.3d 118, 6 OBR 178, 451 N.E.2d 787, we held that sovereign immunity could be restored to a municipality by statute. Thereafter, the General Assembly enacted R.C. 2744.02(B), which provides, in pertinent part:

"Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision or of

any of its employees in connection with a governmental or proprietary function, as follows:

"(1) Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to persons or property caused by the negligent operation of any motor vehicle by their employees upon the public roads, highways, or streets when the employees are engaged within the scope of their employment and authority. The following are full defenses to such liability.

"***

"(b) A member of a municipal corporation fire department or any other fire fighting agency was operating a motor vehicle while engaged in duty at a fire, proceeding toward a place where a fire is in progress or is believed to be in progress, or answering any other emergency alarm and the operation of the vehicle did not constitute willful or wanton misconduct[.]"

{¶ 11} Appellant concedes that all legislative enactments enjoy a presumption of constitutionality. *Hardy v. VerMeulen* (1987), 32 Ohio St.3d 45, 512 N.E.2d 626. Since R.C. 2744.02 involves neither a fundamental right nor a suspect class, the statute is constitutional if it is reasonably calculated to advance a legitimate governmental interest. *Fabrey v. McDonald Village Police Dept.* (1994), 70 Ohio St.3d 351, 639 N.E.2d 31; *Strock v. Pressnell* (1988), 38 Ohio St.3d 207, 527 N.E.2d 1235.

{¶ 12} The court of appeals found two legitimate governmental interests that are served by the grant of statutory immunity. First, the government encourages rapid response of emergency vehicles and personnel. On balance, the harm to an individual who may be injured is outweighed by the benefit to society in general by quick response of emergency personnel. Whether the statute best achieves its purposes is not the focus of a constitutional inquiry. Instead, we must uphold the statute unless it is wholly irrelevant to the achievement of the purpose. *Menefee v. Queen City Metro.* (1990), 49 Ohio St.3d 27, 29, 550 N.E. 2d 181, 183,

citing *McGowan v. Maryland* (1961), 366 U.S. 420, 425, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393, 399. The second legitimate governmental interest cited by the appellate court is the preservation of the financial soundness of the political subdivision. The Supreme Court of the United States has held that states have a valid interest in preserving the fiscal resources and integrity of political subdivisions. See *Shapiro v. Thompson* (1969), 394 U.S. 618, 633, 89 S.Ct. 1322, 1330, 22 L.Ed.2d 600, 614. We have declared that the state may make a rational determination to limit recovery in certain circumstances in order to advance that legitimate state interest. *Menefee, supra,* at 29, 558 N.E.2d at 183; *Fabrey, supra*, at 353, 639 N.E.2d at 38.

**{¶ 13}** Appellant maintains that if R.C. 2744.02 and 2744.03 are constitutional, then innocent injured parties may be left without recourse under the law. Section 16, Article I of the Ohio Constitution provides:

"All courts shall be open, and every person, for an injury done him in his land, goods, person or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay.

"Suits may be brought against the state, in such courts and in such manner, as may be provided by law."

**{¶ 14}** The court of appeals noted the irony that appellant lives in a state that mandates automobile liability insurance, but he must nonetheless personally bear all the costs of the automobile collision where an at-fault motorist claims governmental immunity. It may well be argued that any grant of immunity necessarily impairs some individual's right to seek redress in a court of law, and thus treats some persons harshly. All too frequently, decisionmaking requires difficult balancing of competing interests and equities. The Ohio Constitution specifies that suits may be brought against the state "as provided by law." This language can only mean that the legislature may enact statutes to limit suits if it does so in a rational manner calculated to advance a legitimate state interest. In

*Menefee*, we approved the use of limited classifications devised to respond to reasonable concerns. This case also presents limited immunity granted in specific situations of high public interest. The immunity granted here in R.C. 2744.02 is narrowly tailored to restrict it to emergency situations.

{¶ 15} We note that here, the detrimental effect of the immunity statute is blunted by the enactment of Am.Sub.S.B. No. 20,[1] so that future persons in appellant's circumstances will recover for their injuries.

{¶ 16} We hold that R.C. 2744.02(B)(1) is a constitutional exercise of legislative authority which does not violate the guarantees of equal protection of the Ohio and United States Constitutions because its grant of limited immunity of political subdivisions is rationally related to legitimate state interest.

{¶ 17} The judgment of the court of appeals is affirmed.

*Judgment affirmed.*

DOUGLAS, ACTING C.J., WRIGHT, RESNICK, F.E. SWEENEY and COOK, JJ., concur.

PFEIFER, J., dissents.

W. SCOTT GWIN, J., of the Fifth Appellate District, sitting for MOYER, C.J.

_____

**PFEIFER, J., dissenting.**

{¶ 18} Sovereign immunity—the more they explain it, the more I don't understand it.

{¶ 19} There is no constitutional authority for sovereign immunity in Ohio. Instead, Section 16, Article I of the Ohio Constitution provides that each Ohioan

_____

1. The General Assembly amended R.C. 3937.18(A)(1) in Am.Sub.S.B. No. 20, effective October 20, 1994, which mandates that an insurance carrier honor uninsured motorists coverage to insured policy holders regardless of whether the alleged tortfeasor claims immunity. Accordingly, the General Assembly has resolved the issued raised in this cause. Hereafter, injured persons may recover from their insurance carriers if injured by a tortfeasor who is immune from liability.

has a right to remedy by due course of law. That constitutional right extends to causes of action against the state:

"Suits may be brought against the state, in such courts and in such manner, as may be provided by law."

{¶ 20} Instead of abiding by that clear constitutional mandate, the majority and the General Assembly take a trip "through the looking glass," claiming that what the Constitution means when it says that suits may be brought against the state is that suits cannot be brought against the state.

{¶ 21} The Constitution means what it says—that the General Assembly may determine how and in what courts cases are brought against the state. The General Assembly, for instance, could do for the state's political subdivisions what it has done for the state—create a special court like the Court of Claims to make litigation more convenient for the state. The General Assembly does not have the power, however, to foreclose a citizen's right to recover against the state.

{¶ 22} Another confounding theory underlying sovereign immunity is that the people's constitutional right to sue the state is not "self-executing." By that it is meant that the constitutional right to sue the state does not arise until the General Assembly makes some move to provide for that right. Thus, the General Assembly supposedly has the power to limit a right that does not exist.

{¶ 23} The rationalizations and legal fictions employed to prop up this monarchical throwback are bewildering. The doomsaying is particularly disturbing. The suggestion that without sovereign immunity our communities would go broke is insulting. We expect every person with an automobile to purchase insurance in this state. Should the state be held to a lesser standard of responsibility than we hold for small business, big business, drivers and homeowners?

{¶ 24} Next comes the common claim that we need to protect the integrity of rapid response emergency vehicles and personnel. Emergency vehicles already

have the benefit of a different standard regarding traffic laws which should necessarily result in fewer findings of negligence against rapid response units. Also, sovereign immunity applies in other situations not as dramatic as a firefighter rushing to save children trapped in a burning school. It also applies to a political subdivision's operation of parks, swimming pools, zoos, and golf courses. So when the caddymaster at the local municipal golf course runs over your foot with a golf cart, do not expect to recover from the state -- we cannot risk depriving society of the benefit of golf carts.

{¶ 25} Sovereign immunity is a remnant of history. Just because it is historically based does not mean that it is legitimate. Its illegitimacy is well exemplified in this case. Fahnbulleh, stopped at a stop sign, gets slammed into by a negligently driven fire truck. Since the city is immune from suit, Fahnbulleh's uninsured motorists coverage does not apply, and he is left to pay for the injuries for which he was not at fault. What's right about that?

_____