GROVES et al., Appellees,

v.

DAYTON PUBLIC SCHOOLS et al., Appellants.

[Cite as *Groves v. Dayton Pub. Schools* (1999), 132 Ohio App.3d 566.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 17391.

Decided March 31, 1999.

Douglas A. Hess, for appellee India L. Groves.

Scott G. Oxley and Julie A. Droessler, for appellant Dayton Public Schools.

Patrick K. Dunphy, for appellant Montgomery County Board of Education.

FREDERICK N. YOUNG, Judge.

Defendant-appellant Dayton Public Schools appeals the trial court's denial of its motion to dismiss plaintiff-appellee India Groves's complaint seeking damages for injuries she suffered as a result of Dayton Public School's employee's alleged negligence.  For the reasons that follow, we affirm the judgment of the trial court.

Before recounting the facts of the case, we note that in considering a motion to dismiss for failure to state a claim, a trial court "must construe all material allegations in the complaint and all inferences that may be reasonably drawn therefrom in favor of the nonmoving party," Groves in this case.  *Fahnbulleh v. Strahan* (1995), 73 Ohio St.3d 666, 667, 653 N.E.2d 1186, 1187, citing *Phung v. Waste Mgt., Inc.* (1986), 23 Ohio St.3d 100, 23 OBR 260, 491 N.E.2d 1114, overruled on other grounds by *Kulch v. Structural Fibers, Inc.* (1997), 78 Ohio St.3d 134, 157, 677 N.E.2d 308, 325–326.  All factual allegations in the complaint, therefore, must be construed as true for purposes of the motion.  *Id.*  In addition, we review a trial court's decision on a motion to dismiss *de novo* and, while we need not defer to the trial court's findings, we must, like the trial court, construe the factual allegations in the complaint and all reasonable inferences therefrom in favor of the nonmovant.  *Rich v. Erie Cty. Dept. of Human Resources* (1995), 106 Ohio App.3d 88, 91, 665 N.E.2d 278, 280, citing *York v. Ohio State Hwy. Patrol* (1991), 60 Ohio St.3d 143, 144, 573 N.E.2d 1063, 1064–1065 and *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d

242, 245, 71 O.O.2d 223, 224–225, 327 N.E.2d 753, 754–755. We adhere to these principles as we relate the facts relevant to the case before us.

Groves is a disabled minor confined to a wheelchair and a student at Belle Haven School in Dayton. On the morning of February 24, 1997, Groves rode a school bus owned and operated by Dayton Public Schools[1] from her home to Belle Haven. That morning, the bus driver, an employee of Dayton Public Schools acting within the scope of his employment, assisted Groves in disembarking from the school bus. In so doing, however, he failed to secure Groves in her wheelchair in violation of the rules and regulations established by Dayton Public Schools for the proper departure by physically handicapped students. As a result, Groves's right hand was wedged in the wheel of her chair and she suffered injuries.

On April 24, 1998, Groves, by and through her mother and next friend, Izetta Groves, filed a complaint alleging negligence and seeking damages. Dayton Public Schools filed its answer and a motion to dismiss the complaint on May 28, 1998, contending that R.C. Chapter 2744 provided it with immunity from liability for Groves's injuries. Groves thereafter responded with a memorandum opposing Dayton Public Schools' motion to dismiss. The trial court found the facts in Groves's complaint sufficient to establish the applicability of R.C. 2744.02(B)(1), which provides an exception to a political subdivision's sovereign immunity, and denied Dayton Public Schools' motion to dismiss. Dayton Public Schools filed a timely notice of appeal. In its sole assignment of error, Dayton Public Schools claims the trial court erred in denying its motion to dismiss.

I

■ "The trial court erred to the prejudice of defendant-appellant Dayton Public Schools by denying defendant-appellant's motion to dismiss."

Dayton Public Schools contends that the trial court erred in finding that Groves's complaint sets forth sufficient facts from which it could be concluded that Dayton Public Schools' bus driver's conduct subjects it to liability. It argues that R.C. 2744.02(A)(1) provides a political subdivision, of which it is one, with blanket immunity from liability and that none of the exceptions to liability applies in Groves's case.

We start by noting that R.C. 2744.02(A)(1) does indeed provide broad immunity to political subdivisions. It states as follows:

---

1. Groves's complaint also alleged liability on the part of the Montgomery County Board of Education through its ownership of the bus in question. Prior to this appeal, however, it was determined that the bus was wholly owned by Dayton Public Schools, and Montgomery County Board of Education was voluntarily dismissed from the suit.

"For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."

R.C. 2744.02(B) contains five exceptions to the sovereign immunity given to political subdivisions by R.C. 2744.02(A)(1). Only one exception is pertinent to the present appeal, and it provides as follows:

" * * * [A] political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:

" * * *

"(1) Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees upon the public roads when the employees are engaged within the scope of their employment and authority."

R.C. 2744.02(B)(1) goes on to provide three exceptions which reinstate immunity where the motor vehicle being operated is a patrol car, fire truck, or emergency medical vehicle responding to an emergency call, none of which is applicable to the present case. Thus, our first inquiry must be whether Dayton Public Schools' bus driver's conduct falls within the ambit of operating a motor vehicle on the public roads within the scope of his employment.

R.C. Chapter 2744 contains no definition of the term "operation of any motor vehicle." We find the term capable of encompassing more than the mere act of driving the vehicle involved. Neither of the parties to this appeal refers us to any authority construing the term in question with regard to a driver's assisting a disabled passenger, and our research in Ohio law has failed to reveal any cases on point. The Supreme Court of Pennsylvania, however, has held that "operating" a motor vehicle is limited to actions performed in actually setting the vehicle in motion and does not include a driver's assistance rendered to passengers as they get into or alight from a city-owned vehicle. *Love v. Philadelphia* (1988), 518 Pa. 370, 543 A.2d 531, 533. Instead, the driver's assistance was held to be ancillary to the actual operation of the vehicle.

*Love* did not involve a school bus, however, and other courts that have had the opportunity to address the meaning of "operation of a motor vehicle" in that context have found that the taking on and letting off of students falls within the meaning of the term. See *Baker & Co. v. Lagaly* (C.A.10, 1944), 144 F.2d 344,

345 (holding that "operation of the bus * * * included the receiving of the children into the bus and their exit from it. * * * Opening the door of the bus and allowing children to alight was an integral part in the operation of the bus") and *Nolan v. Bronson* (1990), 185 Mich.App. 163, 177, 460 N.W.2d 284, 290, 291 (defining "operation of a motor vehicle" as " 'being used or employed in some specific function or to produce some desired work or effect' " and concluding that discharging of students falls within that definition).

Here, Groves was a passenger on a school bus equipped to transport children confined to wheelchairs, which suggests to us that it was equipped with a ramp with which to lift and lower the students in their wheelchairs as they boarded and disembarked from the bus. In addition, Dayton Public Schools had established rules and regulations pertaining to the safe boarding, transportation, and disembarking of handicapped students that required bus drivers to, *inter alia*, secure passengers in their wheelchairs when assisting them on or off the school bus. Thus, it can reasonably be inferred that doing so was part of the bus driver's duties and an integral part of his operation of the school bus. Furthermore, we do not exclude the possibility that the driver's operation of the ramp itself would be considered operation of the motor vehicle under the circumstances of this case.

Having concluded that the facts alleged in Groves's complaint could permit a finding that the bus driver was engaged in operating the school bus at the time of Groves's injury, we consider whether the bus was on the public road at the time and whether the driver was acting within the scope of his employment. In her complaint, Groves states that the bus had arrived at Belle Haven School when the accident occurred. Although roads on school premises are not generally considered "public roads," *Miller v. Wadsworth City Schools* (1994), 93 Ohio App.3d 278, 281, 638 N.E.2d 166, 168, nothing in Groves's complaint establishes that the road on which the bus was situated at the time of the accident was on school property or off the public road. We cannot say as a matter of law, therefore, that at trial Groves would be unable to prove the bus was positioned on the public road at the time of the accident. In addition, we accept as true Groves's allegation in her complaint that the bus driver was acting within the scope of his employment as he assisted her exit from the bus.

Nevertheless, Dayton Public Schools contends that an allegation of ordinary negligence, as is the case here, does not abrogate immunity. In arguing its point, it relies on *Fahnbulleh, supra,* and *Thompson v. New Miami Local School Dist.* (Sept. 8, 1998), Warren App. No. CA98–03–051, unreported, 1998 WL 568691. Aside from the fact that R.C. 2744.02(B)(1) specifically subjects political subdivisions to liability for negligent operation of a motor vehicle, we find that both cases relied on by Dayton Public Schools are distinguishable from the one before us.

In *Fahnbulleh*, for instance, the plaintiff's injuries were sustained when his automobile was struck by a Columbus fire truck. R.C. 2744.02(B)(1)(b) provides a specific exception to a political subdivision's liability for injuries caused by a fire department member's negligent operation of a vehicle when responding to an emergency. No similar exception to liability exists for a school district employee's negligent operation of a school bus. Also, in *Thompson*, the plaintiff claimed that she was injured in a school gymnasium due to the defendant's failure to provide adequate supervision. R.C. 2744.03(A)(5), however, provides that a political subdivision is immune from liability for injuries resulting from the exercise of judgment or discretion in determining how to use personnel and facilities unless it is done so with malicious purpose, bad faith, or in a wanton or reckless manner. Therefore, *Fahnbulleh* and *Thompson* fall squarely within one of the statutorily established immunities or defenses to liability available to political subdivisions, unlike Dayton Public Schools in the present case.

We conclude that the trial court properly found that R.C. 2744.02(B)(1) could be applicable to Groves's case and that, consequently, its denial of Dayton Public Schools' motion to dismiss was appropriate. Accordingly, the judgment of the trial court is affirmed.

*Judgment affirmed.*

GRADY, P.J., and FAIN, J., concur.