DOE et al., Appellants,

v.

DAYTON CITY SCHOOL DISTRICT BOARD of EDUCATION, Appellee.

[Cite as *Doe v. Dayton City School Dist. Bd. of Edn.* (1999), 137 Ohio App.3d 166.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 17692.

Decided Nov. 24, 1999.

*Charles D. Lowe* and *Jeffrey W. Snead,* for appellants.

*Scott G. Oxley* and *P. Christian Nordstrom,* for appellee.

GRADY, Presiding Judge.

Plaintiffs, Jane Doe and her parents, appeal from a summary judgment that the court of common pleas granted defendant, Dayton City School District Board of Education, on its defense of immunity from liability on the plaintiffs' claim for relief in tort.

Jane Doe is a first-grade student at a public school in Dayton maintained by the board. She travels to and from the school on a bus owned and operated by the board. On March 7, 1997, Doe was summoned to the rear of the bus by older students, who compelled Doe and another first-grader to place their mouths on the penis of another student.

Doe and her parents commenced this action, claiming that the board is liable for the failure of its school bus driver to protect Doe from the sexual assault that occurred. The board interposed the immunity from liability that it is afforded by R.C. 2744.02(A)(1) as an affirmative defense and subsequently moved for summary judgment on that defense. The trial court granted the board's motion. Doe filed a timely notice of appeal.

### Assignment of Error

"The trial court erred in sustaining defendant–appellee's motion for summary judgment on the grounds that defendant–appellee is entitled to blanket civil immunity, under R.C. 2744 *et seq.,* for the negligence or recklessness of its' [*sic*]

employees in providing school bus transportation to the minor children of the community."

Summary judgment may not be granted unless the entire record demonstrates that there is no genuine issue of material fact and that the moving party is, on that record, entitled to judgment as a matter of law. Civ.R. 56. The burden of showing that no genuine issue of material fact exists is on the moving party. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46.

In reviewing a trial court's grant of summary judgment, an appellate court must view the facts in a light most favorable to the party who opposed the motion. *Osborne v. Lyles* (1992), 63 Ohio St.3d 326, 587 N.E.2d 825. "Because a trial court's determination of summary judgment concerns a question of law, we apply the same standard as the trial court in our review of its disposition of the motion; in other words, our review is de novo." *Am. States Ins. Co. v. Guillermin* (1996), 108 Ohio App.3d 547, 552, 671 N.E.2d 317, 321.

Per R.C. 2744.01(F), school districts are political subdivisions of the state. R.C. 2744.02(A)(1) classifies all functions of political subdivisions as either governmental or proprietary, and grants blanket immunity to political subdivisions from claims for relief in tort arising from the acts or omissions of their employees in connection with performing those functions. R.C. 2744.02(B) sets up certain exceptions to that grant of immunity. R.C. 2744.03 sets up additional exceptions, as well as defenses to establish nonliability.

The General Assembly's enactment of R.C. 2744.02(A)(1) reflects a policy choice on the part of the state of Ohio to extend to its political subdivisions the full benefits of sovereign immunity from tort claims. Likewise, the exceptions to immunity in R.C. 2744.02(B) and the exceptions and defenses in R.C. 2744.03 reflect policy choices on the state's part to submit itself to judicial relief on tort claims only with respect to the particular circumstances identified therein. Because those exceptions and defenses are in derogation of a general grant of immunity, they must be construed narrowly if the balances which have been struck by the state's policy choices are to be maintained.

R.C. 2744.02(B) sets up five exceptions to immunity. Divisions (B)(1) and (3) through (5) set up exceptions which, in the circumstances involved, apply to the negligent acts arising from the performance of its *governmental* functions by employees of a political subdivision. Division (B)(2) states that, except for another section of the code that has no application here, political subdivisions are liable for the negligent acts or omissions of their employees in the performance of any *proprietary* function.

The trial court granted summary judgment for the board on a finding that the negligent act or omission of the school bus driver from which Doe's claim for relief arose involved performance of a governmental function, not a proprietary function. The court relied on the definition of governmental function in R.C. 2744.01(C)(1), which states that governmental functions include "[a] function * * * performed by a political subdivision * * * pursuant to legislative requirement." Because R.C. 3314.09, 3317.01, and 3327.011 each require the board to provide transportation for its students, including Doe, the court reasoned that the driver's alleged negligent acts or omissions arose from his performance of a governmental function.

■ We agree with the trial court's reasoning, at least so far as it went. Because the board was required by law to provide transportation for Doe, the function of providing it was governmental, not proprietary, per R.C. 2744.01(C)(1). Therefore, the exception to immunity in R.C. 2744.02(B)(2), which concerns proprietary functions, has no application. The conclusion necessarily excludes R.C. 2744.01(G)(2)(c), on which Doe had relied, which classifies a "busline or transit company" operated as a "utility" as a proprietary function.

■ Having found that the function involved was governmental, the trial court could nevertheless not grant the board's motion for summary judgment if any of the other immunity exceptions in R.C. 2744.02(B) that pertain to governmental functions might apply. The board argues that Doe may not rely on any of those exceptions on appeal, not having relied on them when opposing the board's motion for summary judgment. We do not agree. It is not entirely clear that in arguing that the function involved was proprietary that Doe waived the four other exceptions in R.C. 2744.02(B) that pertain to the performance of governmental functions. Further, our review of the issue presented is *de novo,* which permits us to determine whether any of the exceptions in R.C. 2744.02(B) applies, as the trial court should have done.

■ The only exception in R.C. 2744.02(B) that might apply on these facts is division (B)(1), which states that political subdivisions are liable for injury, death, or loss "caused by the negligent operation of any motor vehicle by their employees upon the public roads, highways, or streets when the employees are engaged within the scope of their employment and authority." Doe relies on that exception.

It is undisputed that the school bus on which Doe was a passenger when she was assaulted is a motor vehicle and that it was then being operated on the public streets by an employee of the board who was acting within the scope of his employment and authority in operating it. The issue that must be resolved is

whether the injuries and losses that Doe has alleged were caused by the driver's negligent operation of the vehicle.

*Operatio* is a Latin word meaning one day's work performed by a tenant for his lord. Black's Law Dictionary (6 Ed. 1990) 1092. In modern parlance, *operation* has come to refer to a process or mode of action that involves the exertion of power to achieve an effect brought about in accordance with a definite plan. *Id.*

This court has rejected the argument that operation of a motor vehicle for purposes of R.C. 2744.02(B)(1) is limited to manipulation of the vehicle's controls during its travel along a street or highway. In *Groves v. Dayton Pub. Schools* (1999), 132 Ohio App.3d 566, 725 N.E.2d 734, we held that the vehicle's operation includes a school bus driver's negligent acts or omissions in assisting a handicapped student off the bus. However, in *Glover v. Dayton Pub. Schools* (August 13, 1999), Montgomery App. No. 17601, unreported, 1999 WL 958492, we held that the vehicle's operation did not embrace infliction of injuries that a child suffered after alighting from the bus, when she darted into a street and was struck by a car.

*Groves* and *Glover* may be reconciled by application of a proximate-cause standard consistent with the narrow construction of R.C. 2744.02(B)(2) that we discussed above. That construction reasonably requires proof that the injuries or losses alleged are a direct consequence of the employee's negligent operation of the motor vehicle. Such direct consequences follow in sequence from the employee's acts or omissions in the vehicle's operation, without the intervention of any external forces that came into active operation at a later time or apart from it to cause the injury or loss alleged. See Prosser & Keeton, Laws of Torts (5 Ed. 1984), Section 43. Thus, in *Groves,* the handicapped student's injuries were directly traceable to the driver's acts or omissions in assisting her to alight, without the intervention of external forces. In contrast, in *Glover,* the car that struck the student after she had alighted from the bus was such an external force.

The "direct consequences" rule is grounded in the doctrine of intervening cause. That doctrine relieves a party of liability when a break occurs in the chain of causation. A break will occur when there intervenes between an agency creating a hazard and an injury resulting therefrom another conscious and responsible agency that could or should have eliminated the hazard. *Hurt v. Charles J. Rogers Transp. Co.* (1955), 164 Ohio St. 323, 58 O.O. 119, 130 N.E.2d 824. However, the intervening cause must be disconnected from the negligence of the first person and must be of itself an efficient, independent, and self-producing cause of the injury. *Id.* In contrast, a concurrent negligence, that is, one which concurs in point of consequence with the original negligence to produce

the harm involved, does not cut off liability. *Garbe v. Halloran* (1948), 150 Ohio St. 476, 38 O.O. 325, 83 N.E.2d 217.

Here, the injuries that Jane Doe suffered were a product of the school bus driver's alleged failure to keep her safe from harm inflicted by other students. That failure was a breach of the duty imposed on him by his employment as an operator and the authority which that employment involves. However, the harm itself resulted from the intervention of an external factor, the conduct of the older students who compelled Jane Doe to place her mouth on another passenger's penis. That misconduct was an intervening cause of the injury of which Jane Doe complains. In that respect, the harm that she suffered was not directly traceable to the driver's operation of the bus to the extent that R.C. 2744.02(B)(2) requires.

We conclude that reasonable minds could not find that the injuries which Jane Doe has alleged were caused by the negligence of the board's employee in the operation of a motor vehicle. Therefore, the trial court did not err when it granted summary judgment for the Board on its motion.

The assignment of error is overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

BROGAN and WOLFF, JJ., concur.