OPINION
Plaintiff-Appellants Debra Wolfe and Namon Johnson ("Appellants") brought the present action against attorneys Don A. Little and Kent J. Depoorter ("Appellees") for abuse of process and breach of duty, allegedly arising in a previous case. In the previous lawsuit ("Loyalty Transfer case"), Appellees represented Loyalty Transfer and Storage, Inc., who filed the action against Wolfe, Johnson, and 3-D Distributing Co., Inc. (collectively, "3-D Distributing defendants"). Because the procedural history of the Loyalty Transfer case is important to the present case, we will review it briefly as established in Appellants' complaint.
Allegedly, the first contact received by Appellants regarding the Loyalty Transfer case was a subpoena duces tecum to attend depositions scheduled for March 19 and 20, 1998. Appellants claim they did not attend the depositions on the instruction of their attorney, H. Vincent Walsh. On March 20, 1998, Appellees filed a motion for discovery sanctions against the 3-D Distributing defendants, requesting sanctions in the form of default judgment. It was not until four days later, March 24, that Wolfe received service of process and the complaint. It is not clear from the record of this case when Johnson received service.
On March 27, 1998, default judgment was entered against the 3-D Distributing defendants. Thereafter, the 3-D Distributing defendants filed a motion to set aside default judgment, to which Appellees responded. Attached to the response was an affidavit from Little representing that Attorney Walsh had sent him a letter explaining that he had advised Appellants not to appear for their depositions. Attorney Walsh denies ever sending such a letter, and Appellees have never produced it.
The trial court overruled the motion to set aside the default judgment and a damages hearing was held, where the magistrate found the 3-D Distributing defendants liable to Loyalty Transfer for $25,000. The trial court filed an entry and judgment adopting this decision.
Approximately three weeks later, the magistrate filed an amended decision wherein she raised the judgment to $300,000. This also was adopted by the trial court in a final judgment entry. Appellants allege that at some point between the issuing of the original judgment entry and the amended magistrate decision, Appellees had an ex parte communication with the court, which resulted in the increased judgment amount.
On December 13, 1999, Appellants filed the present case against Appellees for breach of duty and abuse of process. Soon after filing their answer, Appellees filed a motion to dismiss for failure to state a claim upon which relief may be granted. Special Magistrate Bixler granted the motion to dismiss and Appellants appealed this decision. However, because Magistrate Bixler could not issue a final appealable order, we remanded. The trial court issued a final judgment entry adopting the magistrate's decision, which also was timely appealed. Appellants raised the following assignment of error in their brief:
 The trial court erred in granting plaintiff's motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Rule 12(B)(6).
A trial court may only grant a motion to dismiss when, after examining the complaint, it appears beyond doubt that the non-moving party can prove no set of facts which would entitle him to the requested relief. York v. Ohio State Hwy. Patrol (1991), 60 Ohio St.3d 143, 144. In its examination of the complaint, the trial court must accept all factual allegations contained therein as true, as well as all reasonable inferences drawn therefrom. Mitchell v. Lawson Milk Co. (1988),40 Ohio St.3d 190, 192. "Although the factual allegations of the complaint are taken as true, `[u]nsupported conclusions of a complaint are * * * not sufficient to withstand a motion to dismiss.'" Shell v. Crain's Run Water and Sewer Dist. (Jan. 21, 2000), Montgomery App. No. 17961, unreported, at p. 1, citing State ex rel. Hickman v. Capots (1989), 45 Ohio St.3d 324, 324. Furthermore, when a motion to dismiss is granted by the trial court, an appellate court must review that decision de novo. Groves v. Dayton Pub. Schools (1999), 132 Ohio App.3d 566,567., Appellants listed three separate issues for review under their sole assignment of error.
 First issue presented for review: Did Appellant's Complaint state a cause of action for abuse of process when it alleged that Appellees intentionally and maliciously committed acts in the furtherance of their improper, ulterior motive of depriving Appellants of their rights to due process, such acts including conducting an ex parte communication with the court which resulted in a 1200% increase of the judgment amount, from $25,000 to $300,000, lying to the court and filing false documents, and not disclosing important procedural issues?
Appellants allege that Appellees committed the tort of abuse of process during the Loyalty Transfer case. The three elements of the tort are: "(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process." Yaklevich v. Kemp, Schaeffer Rowe Co., L.P.A. (1994),68 Ohio St.3d 294, 298. In addition, when an action for abuse of process is raised against an attorney, he may only be held liable if he acts maliciously and has an ulterior purpose which is completely separate from his client's interest. Thompson v. R R Service Systems, Inc. v. Cook (June 19, 1997), Franklin App. No. 96APE10-1277, 96APE10-1278, unreported, at p. 14, citing Scholler v. Scholler (1984), 10 Ohio St.3d 98, paragraph one of syllabus (other citations omitted). The tort of abuse of process developed to provide a remedy in situations where an appropriate legal procedure has been properly initiated, and even has ultimate success, but has been corrupted in order to accomplish some ulterior motive for which a court proceeding was not intended. Yaklevich, supra, at 297. Basically, "abuse of process occurs where someone attempts to achieve through use of the court that which the court is itself powerless to order." Robb v. Chagrin Lagoons Yacht Club, Inc. (1996),75 Ohio St.3d 264, 271.
The parties do not dispute that the first element of this tort was met. The Loyalty Transfer case was a legal proceeding that was set in motion in proper form and with probable cause. Conversely, the second element is disputed by the parties. In order to show the process was perverted to accomplish an ulterior purpose, the Appellants must show both an act committed during the process that was not proper in the normal conduct of the proceeding and the Appellees' ulterior motive. Pheils v. Garber-Lawrence Pub. Group, Inc. (Dec. 10, 1993), Lucas App. No. L-92-418, unreported, at p. 13 (citations omitted).
In their complaint, Appellants allege that Appellees (1) improperly subpoenaed them to a deposition contrary to the civil rules, (2) submitted a false affidavit with their response to Appellants' motion to set aside default judgment, and (3) initiated an ex parte communication with the trial court which resulted in a twelve hundred percent increase in the judgment. Taking these allegations as true, we believe Appellants have demonstrated that Appellees committed improper acts during the judicial process. However, the "key consideration in an abuse of process action is whether an improper purpose was sought to be achieved by the use of a lawfully brought previous action." Yaklevich, supra, at 300. We find that Appellants did not properly allege an ulterior purpose in their complaint., Appellants made a bare allegation that Appellees committed the above three acts with the ulterior purpose to deprive them of their right to due process. However, Appellants were required to allege facts demonstrating that these acts were committed for that ulterior purpose. Nosker v. Greene County Regional Airport Authority (May 23, 1997), Greene App. No. 96 CA 101, unreported, at p. 2. When examining Appellants' complaint, they did not allege facts supporting this or any other ulterior purpose.
First, Appellees sent a subpoena duces tecum to Appellants, as well as sending a notice pursuant to the rules, in order to secure their testimony in a deposition and compel them to bring necessary documents. Although this could have been a procedural mistake, there were no facts indicating how use of the subpoenas could have deprived Appellants of their due process rights, or that they were used for any other ulterior purpose., Appellants further alleged that Little filed an affidavit with the trial court containing false information. The only potential false information we can discern would be a statement that Appellants' attorney had sent a letter to Little explaining that he had advised Appellants not to attend their depositions. Again, clearly it is not appropriate to submit an affidavit containing false information. However,
Pursuant to Civ.R. 45(A)(1)(c), a party's attendance at a deposition should be secured by notice, not subpoena. Appellants did not disclose facts in their complaint demonstrating that this allegedly false statement was made to deprive them of their due process rights.
Finally, Appellants claimed that Appellees had an ex parte communication with the trial court which resulted in the trial court filing an amended judgment entry increasing the judgment amount from $25,000 to $300,000. Taking the allegations in the complaint as true, an ex parte communication with the trial court is completely inappropriate and could possibly subject the attorney to disciplinary action, if proven. Nonetheless, even if this ex parte communication occurred, the complaint does not state facts supporting that it was conducted for any purpose other than furthering the interests of Appellees' client.
Assuming arguendo Appellants properly pled deprivation of due process as an ulterior purpose, their abuse of process claim still would not survive a motion to dismiss. In reviewing several abuse of process cases, we found that the ulterior purpose or motive has been interpreted as an attempt to gain an advantage outside the proceeding, such as payment of money or surrender of a claim, using the process itself as the threat. Robb, supra, at 271 (abusing process to coerce members of a yachting club to vote in their favor). See, also, Blank v. Securx, Inc. (1997), 123 Ohio App.3d 248, 255 (abusing process to coerce payment of a settlement regardless of merit); Thompson, supra, at p. 14 (abusing criminal process to coerce adjustment of private civil claims); Chain v. Internatl City Bank and Trust Co. (E.D.La. 1971), 333 F. Supp. 463, 466
(listing typical ulterior purposes as extortion of money, prevention of a conveyance, compelling someone to give up possession of something of value, when these things were not the purpose of the suit).
In contrast, Appellants in the present case claim that Appellees perverted the process in order to deprive them of their due process rights. Appellants rely on Pheils v. Garber-Lawrence Pub. Group, Inc. (Dec. 10, 1993), Lucas App. No. L-92-418, unreported, to argue that deprivation of due process rights has been recognized as an ulterior purpose in an abuse of process claim. The case appealed in Pheils was the fifth in a line of lawsuits brought by David Pheils or someone in privity with him to enforce a settlement agreement against the Garbers. Id. at p. 6. In the latest case, service by publication was utilized because the Pheils claimed that they could not with due diligence locate a current address for the Garbers. When the Garbers did not file an answer, default judgment was entered against them. After learning of the default judgment, the Garbers successfully had it vacated, and filed an answer and several counterclaims, including a claim for abuse of process. Id. at pp. 6-7. Following motions for summary judgment from every party, the trial court granted all filed by the Pheils, particularly granting judgment in their favor on the abuse of process claim. Id. at p. 7.
The court of appeals in Pheils reversed summary judgment on the abuse of process claim, finding there were genuine issues of material fact regarding the elements of the tort, including the ulterior purpose. Id. at p. 14. More specifically, the court found the possible ulterior purposes for using service by publication on the basis of known inaccurate information were to prevent the Garbers from learning of and defending the case, or harassment. Id.
On the other hand, in Grange Mut. Cas. Co. v. Klatt (Mar. 18, 1997), Franklin App. No. 96APE07-888, unreported, the court found no abuse of process with similar facts. The plaintiffs in Klatt issued service through the Secretary of State with the alleged ulterior purpose of prohibiting appellees from learning of and defending the action. The Klatt court found this fell short of an abuse of process claim because the service was not completed in an attempt to gain a collateral benefit outside of the process, but instead was an improper use of the rules to gain an objective contemplated by the process, i.e. succeeding in the lawsuit. Id. at p. 5.
We agree with this reasoning of the Klatt court. In the present case, Appellants claim that Appellees presumably issued a subpoena instead of notice to appear for a deposition, filed an allegedly false affidavit, and conducted an ex parte communication with the court, all with the ulterior purpose of depriving Appellants of their right to due process. Like the allegations in Klatt, we believe this falls short of the ulterior motive necessary for an abuse of process claim, because it was not an attempt to gain a collateral benefit outside of the process. Instead, Appellees were acting to advance the interests of their client and succeed in the lawsuit.
Because Appellees are attorneys, in order to sustain an abuse of process claim against them, Appellants needed to allege facts demonstrating Appellees acted maliciously and for an ulterior purpose completely separate from their client's interest. Thompson, supra, at p. 14. Instead, they only made bare allegations in their complaint that these acts were done with the ulterior purpose of depriving them of their due process rights. See, Nosker, supra. As we stated previously, bare, conclusory allegations are insufficient to survive a motion to dismiss. State ex rel. Fain v. Summit Cty. Adult Prob. Dept. (1995),71 Ohio St.3d 658, 659. Further, all improper acts allegedly committed by Appellees would also logically advance the best interests of their client.
Based on the foregoing, we agree with the trial court that Appellants did not sufficiently plead an ulterior purpose to support their abuse of process claim. The first issue for review is therefore overruled.
 Second issue presented for review: In Ohio, does an attorney owe a duty to an opposing party to refrain from maliciously initiating and participating in ex parte communications the direct result of which is the raising of a judgment by 1200% without notice and to refrain from engaging in other malicious conduct such as filing false documents and concealment of important procedural issues?
Appellants attempt to argue that "[a]s attorneys licensed to practice in the State of Ohio," Appellees owed duties to Appellants not to commit the acts alleged in the first issue for review. We agree with the trial court there is no basis in law for these "duties." Instead, attorneys only owe a duty to third persons arising from their performance as attorneys if the third person is in privity with the attorneys' client or if the attorneys act maliciously. Scholler, supra, at paragraph one of syllabus. Appellants made no allegations in their complaint that they were in privity with Appellees' client, but instead alleged that Appellees "maliciously breached the aforementioned duties."
Even though Appellants used the word "maliciously" under this cause of action in the complaint, this is not sufficient in itself to withstand a motion to dismiss. Because Appellees do not have a duty to begin with, they cannot "maliciously breach" nonexistent duties. Furthermore, Appellants draw an unsupported conclusion that the attorneys acted "maliciously," which is also insufficient to survive a motion to dismiss. See Shell, supra.
Because no duty existed for Appellees to have breached against Appellants, their second issue for review is overruled.
 Third issue presented for review: Do the facts alleged in Plaintiff's complaint state any claim upon which relief may be granted or have Plaintiffs simply suffered a maliciously inflicted injury for which the Courts recognize no remedy?
Appellants do not present any new arguments in their third issue for review that were not already addressed in the prior two issues. However, in answer to the question posed by Appellants, their appropriate remedy would have been a timely appeal to the Loyalty Transfer case.
Based on the foregoing, we find the trial court did not err in granting Appellees' motion to dismiss. Accordingly, Appellants' sole assignment of error is overruled. Judgment affirmed.
WOLFF, P. J., and YOUNG, J., concur.