Kelly, J.
I respectfully dissent. The majority today restricts the motor vehicle exception to governmental immunity to instances “directly associated with the driving of a motor vehicle.”[1]1 disagree.
Operating a motor vehicle requires the performance of functions some of which are distinct from the act of driving. At a minimum, the Court should include within its reading of the statutory exception those functions that are distinct from, but necessary to and inherent in, driving a motor vehicle. I would hold that the opening and closing of bus doors to permit the driver to leave the bus is one such activity. Therefore, I would affirm the Court of Appeals decision that the motor vehicle exception applies to the factual occurrences alleged by plaintiff.
*323 THE OPERATION OF THE DOORS OF THE BUS IN THIS CASE WAS INHERENT IN AND NECESSARY TO DRIVING THE BUS
Although it is trae that the motor vehicle exception to governmental immunity must be narrowly construed,[2] the majority’s reading of the term “operation” is unnecessarily and inappropriately narrow.
The statute in question makes a governmental agency, such as defendant, liable for its negligent operation of a motor vehicle it owns.[3] In writing it, the Legislature did not define the term “operation.” Confronted with providing a definition, our Court of Appeals in Orlowski v Jackson State Prison[4] adopted the interpretation of “negligent operation” accepted by most other jurisdictions. As a consequence, for over thirty years Michigan courts have followed the rule that “ ‘negligent operation’ may occur even though the vehicle is standing still as long as it is being used or employed in some specific function or to produce some desired work or effect.”[5] This Court did not grant leave to appeal in Orlowski or its progeny to overturn that precedent. However, today, without the benefit of full briefing or oral argument, the majority announced a new rule redefining “negligent operation” to mean “negligent driving.” It does this despite the fact that the long line of Court of Appeals cases discussed in the thorough Court of Appeals opinion militates against peremptory action by this Court.
*324 Today’s redefinition of “negligent operation” is particularly inappropriate as applied to this case. Here, plaintiff alleged that he was injured as a consequence of the negligent operation of the hydraulic doors on defendant’s bus. His injury occurred after the driver had parked the bus and shut off the engine. In order to get out of the bus, the driver had to open the doors. Without contest, the doors were an integral part of the bus. Their operation was inherent in and necessary to the operation of the bus.
Consider the majority’s definition of “operation” in a hypothetical case involving the same bus. Assume that a passenger was injured because of negligent operation of the hydraulic doors while the bus was stopped. The bus was not being “operated” as the majority defines the term, because it was not being “driven.” Would the injury be barred by governmental immunity? If so, what wording in the statute evidences a legislative intent to define the term so narrowly? If not, why should the fact that in this case the plaintiff was not a passenger affect the definition of “operation?” Recall that the statute does not require that the motor vehicle be involved in any particular activity. Recall also that the statute does not include words such as “upon a highway.”
Assume a second hypothetical case involving the same bus, in which the bus was stopped on a hill, its engine off. Through the driver’s negligent setting of the brakes, it began to roll, injuring a pedestrian. Would governmental immunity apply? Could the Legislature have intended that someone thus injured by the bus would not be entitled to bring suit against defendant merely because the bus was not being driven?
*325 DECISIONS FROM OTHER JURISDICTIONS FIND OPERATION OF MEANS OF EGRESS FROM A BUS CONSTITUTES OPERATION OF THE BUS
Other jurisdictions interpreting statutes similar to Michigan’s have held that functions involving entry or departure from a bus are part of the operation of a motor vehicle. In Groves v Dayton Pub School,[6] the Ohio Court of Appeals held that a bus driver’s negligence in helping a handicapped student get out of a bus involved the “operation of a motor vehicle.”[7]
*326 In Groves, the plaintiff suffered a hand injury when the bus driver failed to secure the plaintiff in her wheelchair before helping her- get off the bus. The defendant claimed that the bus driver’s actions could not constitute “negligent operation of [a] motor vehicle” for the purpose of the Ohio exception to governmental immunity.
The Groves Court did not agree. It concluded:
R.C. Chapter 2744 contains no definition of the term “operation of any motor vehicle.” We find the term capable of encompassing more than the mere act of driving the vehicle involved. Neither of the parties to this appeal refer us to any authority construing the term in question with regard to a driver assisting a disabled passenger, and our research in Ohio law has failed to reveal any cases on point.
* * *
Here, Groves was a passenger on a school bus equipped to transport children confined to wheelchairs, which suggests to us that it was equipped with a ramp with which to lift and lower the students in their wheelchairs as they boarded and disembarked from the bus. In addition, Dayton Public Schools had established rules and regulations pertaining to the safe boarding, transportation, and disembarking of handicapped students that required bus drivers to, inter alia, secure passengers in their wheelchairs when assisting them on or off the school bus. Thus, it can reasonably be inferred that doing so was part of the bus driver’s duties and an integral part of his operation of the school *327 bus. Furthermore, we do not exclude the possibility that the driver’s operation of the ramp itself would be considered operation of the motor vehicle under the circumstances of this case. [Id. at 569-570.]
Similarly, in Sonnenberg v Erie Metro Transit Auth,[8] the Commonwealth Court of Pennsylvania held that operating a bus’ doors was integral to operating the bus. In that case, the doors unexpectedly closed on the plaintiff while she was getting out of the bus, injuring her. The issue was whether the operation of the doors could be “operation” of a motor vehicle under the Pennsylvania statute.[9]
The Sonnenberg Court held:
The movement of parts of a vehicle, or an attachment to a vehicle, is sufficient to constitute “operation.” Moreover, the bus driver’s closing of the bus doors is an act normally related to the “operation” of a bus. . . . We must conclude, therefore, that (the defendant’s bus was in “operation” when the bus door struck Sonnenberg . . . .” [Id. at 537.]
Groves and Sonnenberg use different approaches. However, both recognize that the functioning of an apparatus that permits people to enter into or depart from a bus should be considered the “operation” of the vehicle itself.
*328 CONCLUSION
For the reasons stated, I would hold that the stationary bus was still in operation if, as alleged, the driver operated the hydraulic doors as a means of egress, thereby injuring plaintiff. Not only was any operation of the hydraulic doors an operation of the vehicle, it was inherent in and necessary to driving the vehicle. Therefore, I would affirm the decision of the Court of Appeals.

 Ante at 321.

 Stanton v Battle Creek, 237 Mich App 366; 603 NW2d 285 (1999), aff’d 466 Mich 611 (2002).

 MCL 691.1405.

 306 Mich App 113; 193 NW2d 206 (1971).

 Id. at 116, citing Diggins v Theroux, 314 Mass 735; 51 NE2d 425 (1943).

 132 Ohio App 3d 566; 725 NE2d 734 (1999).

 Id. at 569. The Groves court interpreted the Ohio governmental immunity statute, Ohio Rev Code Ann 2744.02, which contains language similar to Michigan’s statute:
We start by noting that R.C. 2744.02(A)(1) does indeed provide broad immunity to political subdivisions. It states as follows:
For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.
R.C. 2744.02(B) contains five exceptions to the sovereign immunity given to political subdivisions by R.C. 2744.02(A)(1). Only one is pertinent to the present appeal, and it provides as follows:
... [A] political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:
(1) Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees upon the public roads when the employees are engaged within the scope of then employment and authority.
*326 R.C. 2744.02(B)(1) goes on to provide three exceptions which reinstate immunity where the motor vehicle being operated is a patrol car, fire truck, or emergency medical vehicle responding to an emergency call, none of which are applicable to the present case. Thus, our first inquiry must be whether Dayton Public Schools’ bus driver’s conduct falls within the ambit of “operating a motor vehicle on the public roads within the scope of his employment.” [Id. at 568-569.]

 137 Pa Commw 533; 586 A2d 1026 (1991).

 The relevant statute, 42 Pa Consol Stat 8542, provided:
(b) Acts which may impose liability — The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:
(1) Vehicle liability- — The operation of any motor vehicle in the possession or control of the local agency. As used in this paragraph, “motor vehicle” means any vehicle which is self propelled and any attachment thereto, including vehicles operated by rail, through water or in the air.