{¶ 59} I concur in the judgment to affirm the trial court's denial of summary judgment in favor of appellant but write separately because I would find that the police officer in this case was not responding to an "emergency call." Accordingly, the Village of Bentleyville should not be entitled to immunity under R.C. 2744.02(B)(1)(a).
 {¶ 60} "Emergency call" is defined in R.C. 2744.01(A) as a "call to duty, including, but not limited to, communications from citizens, police dispatches, and personal observations by peace officers of inherently dangerous situations that demand immediate response on the part of a peace officer." The Supreme Court of Ohio in Colbert v.Cleveland, 99 Ohio St.3d 215, 2003-Ohio-3319, held in the syllabus that the term "`emergency call' * * * involves a situation to which a response by a peace officer is required by the officer's professional obligation." In reaching this conclusion, the court reasoned that an emergency call is not one limited to only inherently dangerous situations and if the General Assembly had intended to impose such a limitation it could have expressly done so. *Page 17 
Although the court's interpretation of "emergency call" is indeed broad, it cannot be read so broadly to mean that any response by a police officer to all professional obligations constitutes an emergency call. In keeping with the reasoning of the supreme court, if the General Assembly had intended such a broad interpretation to characterize as emergency calls any response by peace officers that invoke a professional obligation or duty, it could have enacted legislation to encompass all such duties. Instead, the General Assembly provided immunity to political subdivisions for injury, death, or loss resulting from the negligent operation of a motor vehicle by peace officers responding specifically to emergency calls.
 {¶ 61} However the phrases "call to duty" and "response required by professional obligation" are interpreted or defined, it seems clear that the General Assembly intended that there be a distinction made between responses to emergencies and other responses requiring a police officer's professional duty. Such a distinction is supported by the fact that political subdivisions are immune for the negligent operation of motor vehicles only when public safety personnel are involved. This limitation recognizes that the duties of these particular employees are those that routinely require a rapid response in order to effectively and efficiently assist and protect others from harm or loss. However, the duties and professional obligations of public safety personnel do not always require a rapid response and the General Assembly noted as much by "distinguish[ing] emergency calls to duty from ordinary calls to duty." Colbert at ¶ 20 (Pfeifer, J., dissenting). In addition to there being immunity under R.C. 2744.02(B)(1)(a) when a police officer responds to an emergency call, *Page 18 
R.C. 2744.02(B)(1)(b) provides immunity when a member of the fire department is "engaged in duty at a fire * * * or answering any otheremergency alarm," and R.C. 2744.02(B)(1)(c) provides for immunity when a member of the emergency medical service is "responding to or completing a call for emergency medical care or treatment." (Emphasis added.) The common theme of providing immunity when responding to emergency situations as opposed to other situations requiring a professional obligation of safety personnel cannot be ignored or lost in the analysis of this case.
 {¶ 62} Additionally, it defies logic that the judiciary would designate as an emergency call that which the police department does not deem to be an emergency call. Officer Enk was going to the city of Euclid to pick up a prisoner being held on an outstanding warrant for failing to appear for a traffic citation. The Bentleyville police policies and procedures define this particular assignment as a Priority Code 2 response that requires the responding officer to obey all traffic laws. It is clear that the police department did not equate the discharge of Officer Enk's professional duty in this case to responding to an emergency call. When challenged on constitutional grounds, the supreme court in Fahnbulleh v. Strahan (1995), 73 Ohio St.3d 666, 668,1995-Ohio-295, held that the grant of sovereign immunity provided by R.C. 2744.02(B) was found to serve two legitimate governmental purposes: to encourage rapid response of emergency vehicles, and to preserve the financial soundness of the political subdivision. The court found that the potential harm to an individual was outweighed by the benefit to society of the rapid response of emergency personnel, therefore the statute was upheld as constitutional because the statute is not wholly irrelevant to the achievement of the *Page 19 
purpose. See, also, Menefee v. Queen City Metro. (1990),49 Ohio St.3d 27, 29, citing McGowan v. Maryland (1961), 366 U.S. 420, 425.
 {¶ 63} In Fahnbulleh, the court found that R.C. 2744.02(B) was not a violation of the guarantees of equal protection of the Ohio and United States Constitutions because it is a "grant of limited immunity for political subdivisions that is rationally related to [a] legitimate state interest," and the immunity granted is "narrowly tailored torestrict it to emergency situations." Id. at 669-670. (Emphasis added.) By expanding the meaning of "emergency call" so broadly as to encompass any and all responses based on the multitude of an officer's professional obligations, would be to stretch the definition to a point where the benefit to society no longer outweighs the potential harm caused to others from the negligent operation of a motor vehicle by public safety personnel.
 {¶ 64} Although the court in Colbert found that a "call to duty" noted in the definition of "emergency call" was not limited to "inherently dangerous situations," that finding did not expand a "call to duty" to encompass all responses to any situation. Therefore, I would find that the facts of this case do not present a scenario of responding to an "emergency call" that the General Assembly intended to trigger sovereign immunity.