*20 Pfeifer, J.,
dissenting.
I
{¶ 32} Ohio parents will be startled to learn that school bus drivers in this state have but one responsibility: don’t crash the bus. A school bus can become “Lord of the Flies” on wheels, but apparently as long as the driver maintains an assured clear distance from other drivers, a school board faces no liability for what happens inside. It turns out that the school bus driver’s cargo is no more precious than that of the garbage truck driver. Just don’t crash the bus!
{¶ 33} I would hold that “operation” of a school bus pursuant to R.C. 2744.02(B)(1) includes attention to student safety. The majority writes that “the exception to immunity in R.C. 2744.02(B)(1) for the negligent operation of a motor vehicle pertains only to negligence in driving or otherwise causing the vehicle to be moved.” However, R.C. 2744.01(B)(1) does not refer to “driving” — it refers to “operation.” I would hold that “operation” of a motor vehicle includes “driving” but also includes other activities relevant to the general purpose of the vehicle.
{¶ 34} The Ohio Administrative Code distinguishes between “driving” a school bus and “operating” a school bus; in the code, “driving” a bus is only one aspect of “operating” a bus. Before a bus driver may “operat[e] a school bus with pupils on board,” he or she must complete training that includes “[d]riving the bus” but also includes “[p]upil management.” (Emphasis added.) Ohio Adm.Code 3301-83-10(A)(2)(d) and (f). Before “operating a bus with pre-school and special needs children on board,” the driver must receive training in “[a]ppropriate behavior management.” (Emphasis added.) Ohio Adm.Code 3301-83-10(A)(3)(a). Throughout Ohio Adm.Code 3301-83-10, in regard to driver-training requirements, annual inservice training, and certification renewal, driving is treated as only one part of operating a school bus.
{¶ 35} The court in Groves v. Dayton Pub. Schools (1999), 132 Ohio App.3d 566, 725 N.E.2d 734, recognized that there is more to the operation of a school bus than driving. In Groves, a disabled student alleged that she had suffered injuries as a result of a district bus driver’s negligence in failing to secure her in her wheelchair when helping her off the bus. The court held that assisting a handicapped student off the bus was part of a bus driver’s duties and could be found by a jury to be part of “operating” the school bus for purposes of R.C. 2744.02(B)(1). Id. at 570, 725 N.E.2d 734.
{¶ 36} Every child, parent, and school administrator knows that there is much more to a bus driver’s operation of a school bus than driving. Whether the driver in this case was negligent should be an issue for the trier of fact. This case is about more than whether the Marlington school board is liable; it is about *21 whether a school board can ever be liable for anything that happens on a school bus. The injurious activities in this case were apparently surreptitious. But the holding today would apply to cases where the abuse was visible. It would apply to cases where a child was screaming for help. It would apply to cases where a bus driver allowed strange adults onto the bus. As long as the driver drove safely, the school district would be immune.
Hill Hardman Oldfield, L.L.C., John F. Hill, and Joy Malek Oldfield, for appellants.
Britton, Smith, Peters & Kalail Co., L.P.A., David Kane Smith, Krista K. Ke’m, and Sherrie C. Massey; and Mary Jo Shannon Slick, for appellees.
Harry B. Keith, urging reversal for amicus curiae Ohio Legal Rights Service.
{¶ 37} To be sure, operating a school bus is complex. But R.C. 2744.02(B)(1) refers to the operation of any motorized vehicle, without regard to the inherent complexities of operating any particular type of vehicle. The exception from immunity contained in R.C. 2744.02(B)(1) should apply to all aspects of operating a school bus.
II
{¶ 38} As I wrote in Garrett v. Sandusky (1994), 68 Ohio St.3d 139, 144, 624 N.E.2d 704 (Pfeifer, J., concurring), “Governmental immunity, including municipal immunity, is contrary to the clear meaning and mandate of the Ohio Constitution.” Sovereign immunity is not rooted in the Ohio Constitution; it was originally a creation of the common law. In Haverlack v. Portage Homes, Inc. (1982), 2 Ohio St.3d 26, 2 OBR 572, 442 N.E.2d 749, this court abrogated the common-law doctrine of sovereign immunity for political subdivisions, so the General Assembly responded by imposing sovereign immunity by statute. R.C. 2744.01 et seq. But any statute purporting to grant immunity to political subdivisions violates Section 16, Article I of the Ohio Constitution, and its grant of a right to a remedy to any injured citizen:
{¶ 39} “All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay.”
{¶ 40} As it stands, the General Assembly’s virtual proclamation in R.C. 2744.01 et seq. that “the King can do no wrong” leaves certain profoundly injured Ohioans with no remedy in court, in direct defiance of Section 16, Article I of the Ohio Constitution. As George Bernard Shaw once said, “Kings are not born: they are made by artificial hallucination.” Or in this case, by statute.
*22 Tzangas, Plakas, Mannos & Raies, Ltd., Denise K. Houston, and Edmond J. Mack, urging reversal for amici curiae Ohio Coalition for the Education of Children with Disabilities, Children’s Defense Fund, Equal Justice Foundation, and Ohio Association for Justice.
Means, Bichimer, Burkholder & Baker Co., L.P.A., Nicole M. Donovsky, and Richard W. Ross, urging affirmance for amicus curiae Ohio School Boards Association.